Eliseo A. GARZA et al., Appellants,

v.

The SAN ANTONIO LIGHT et al., Appellees.

No. 982.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 31, 1975.

Rehearing Denied Jan. 30, 1976.

Carl C. Chase, Chase & House, Corpus Christi, for appellants.

James D. Baskin, Jr., Matthews, Nowlin, MacFarlane & Barrett, San Antonio, for appellees.

## OPINION

YOUNG, Justice.

This is an action for libel brought by Eliseo A. Garza and his wife as next of friend for their minor daughter, Mary Garza, against the San Antonio Light, a newspaper, and others. The newspaper published an article on January 30, 1970 entitled "San Antonio's Forgotten Adoptables" which contained the photograph of Mary Garza. The case was submitted to a jury on special issues. The trial court accepted a verdict in which the jury: (1) left unanswered several of the special issues about liability; (2) did answer the damage issues with "None" as general damages and "$25,-000.00" as exemplary damages. Based on the partial verdict, the trial court rendered a take nothing judgment. The Garzas appeal from that judgment.

The San Antonio Light is a daily newspaper published in San Antonio, Texas. The author of the offending article was Nathan Sherman, a reporter for the newspaper. Sherman had been instructed by his superiors to write a public service article about children ready for adoption in San Antonio who, for various reasons, were difficult to place in adoptive homes. Sherman conducted interviews and collected photographs for his article from various child care and adoption agencies in San Antonio. The photographs were of children who were not adopted in the immediate San Antonio area and the identities of the children were not known to Sherman.

The published article contained six case histories with accompanying photographs of small children. The names, photographs, and case histories did not match, nor were they intended to. The photograph accompanying the story about "Lupe" was a photograph (several years old) of Mary Garza. The family background of "Lupe" was described in the article as follows:

"Lupe, 'a beautiful child and very much adoptable,' is overlooked by prospective parents because her family tree is cluttered with drug addicts, prostitutes and illegitimate children.

Lupe . . . was born to a woman who is a former patient of a state mental hospital who has been arrested several times on narcotics charges.

Before Lupe was taken from her home by the state she had been living with her grandmother, also a prostitute, and her grandfather, who was in jail on charges of criminally assaulting his 12-year-old daughter."

This is not, however, the family background of Mary Garza. Mary was adopted at the age of three and was nine years of age at the time of the publication. She had not been informed that she was adopted until about a year before trial. She had not been made aware of the article or its contents until the time of trial. There is evidence that she had neither seen nor read the article and had been neither teased nor harassed as a result of the article.

The case was submitted to the jury on special issues and the record reflects that the jury had difficulty during their deliberations in answering the various special issues. They sent a series of four notes to the court. Three of the notes indicated that the jury could not arrive at a verdict. The other note was as follows:

"Please give us the definition of the word 'Tending' as used in Special issues 1 thru 6. Does it apply at the time suit was filed, present or future?

Foreman—/s/ Manuel Segura"

The court then contacted all attorneys to discuss a possible answer. A response was drafted and was eventually delivered to the jury in the following form:

"LADIES AND GENTLEMEN OF THE JURY:

You are instructed that each of Special Issues No. 1 through 6 should read (with the exception of the omitted words):

'Do you find from a preponderance of the evidence that *at the time of publication* the article and photographs . . . was a publication:

A. Tending to . . .'" (Emphasis supplied.)

Before the note was delivered to the jury, the appellants urged the court to change also the wording of Special Issue No. 9, the general damage issue, because they felt the new wording of Special Issues No. 1 through 6 would have the effect of directing the jury to limit the award of damages to injury incurred at the time of publication. The court refused to change Special Issue No. 9, but offered appellants the opportunity to present additional jury argument under the provisions of Rule 286, T.R. C.P. They declined this offer. The court then inquired whether the parties wished to have the jury brought back into the courtroom to read to them the answer to their question. All parties agreed that it would be sufficient for the instruction to be delivered in its written form to the jury room; it was delivered as agreed. The jury thereafter returned the incomplete verdict.

In five points of error the appellants complain that the trial court erred by: (1) trying the case on an incorrect basis of law; (2) failing to give the jury a requested definition; (3) failing to submit to the jury a requested special issue; (4) sending a note to the jury, after deliberations had begun, changing the wording of several special issues; and (5) granting judgment on the partial jury verdict.

We will first discuss appellants' fifth point complaining about predicating the judgment on the partial jury verdict. In

that regard, the record reveals that when the jury returned to open court, the foreman announced to the court that the jury had not been able to answer all of the issues, but that ten jurors had been able to agree upon the answer to certain issues. After the court inspected the verdict, it was presented for inspection to counsel for all parties. It was inspected by them and in open court counsel for all parties requested that the court receive and file the verdict. The court announced that the partial verdict of the jury was received and ordered filed. Thereafter, the jury was discharged.

■ The jury has answered "None" to the general damage issue, Special Issue No. 9. If the jury had given answers favorable to the appellants on the unanswered special issues about liability, the appellee newspaper would still be entitled to judgment because of the "None" answer about damages. That is, the results of the case would be the same and the unanswered special issues are immaterial. The trial court, therefore, correctly entered judgment on the partial verdict of the jury. *Elliott v. Hamilton*, 512 S.W.2d 824, 827 (Tex.Civ.App.—Corpus Christi 1974, no writ).

■ Further, it is the duty of the party dissatisfied with a verdict to make known his objections to the court before the verdict is accepted and the jury discharged. The appellants have not properly discharged their duty and, therefore, have not preserved their objection. *Elliott v. Hamilton*, supra. Appellants' fifth point is overruled.

■ Appellants contend in their second point that it was error for the trial court to refuse to define the term "public hatred". The request and the suggested form of the definition was made by the appellants as they dictated their objections to the charge to the court reporter. In their third point the appellants contend that it was error to refuse to submit a requested special issue. That request and the suggested form of the special issue were also made as the appel-

lants dictated their objections to the court's charge. These points must be overruled.

The objections to the court's charge and the submission of the definition and special issues were made together. The failure to submit definitions or special issues may not be considered as error by an appellate court unless they have been requested separate and apart from the objections made to the court's charge. *Vega v. Royal Crown Bottling Company*, 526 S.W.2d 729, 734 (Tex. Civ.App.—Corpus Christi 1975, no writ); *Samford v. Duff*, 483 S.W.2d 517, 527 (Tex. Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.); Rule 273, T.R.C.P. Appellants' second and third points are overruled.

■ In their fourth point, the appellants urge that it was error for the court to send a note to the jury after deliberations had begun. They further contend that the note was a comment by the judge on the weight of the evidence because it would limit the jury's award of damages to "the time of publication" and the jury would not consider those damages which reasonably, naturally, and proximately flow from the article at a later date.

The appellants cite *Garcia v. Sky Climber, Inc.*, 470 S.W.2d 261 (Tex.Civ.App.— Houston [1st Dist.] 1971, writ ref'd n. r. e.) as authority for their contention that the note was a comment upon the weight of the evidence. In *Garcia*, the jury returned conflicting answers to the special issues. The trial judge retired the jury for further deliberation with additional instructions which the Court of Civil Appeals considered could have been interpreted as indicating to the jury that the judge questioned its answers to those issues to which the additional instructions related. We do not find that such a comment was made in this case. Also, in the present case the judge was not aware of any of the jury's answers to the special issues at the time of the questioned communication.

■ The appellants also argue that the court and counsel may not agree to waive the requirements of Rule 286, T.R.C.P.,

when communicating with the jury during its deliberations, citing *Missouri Pacific Railroad Co. v. Cross*, 501 S.W.2d 868 (Tex. Sup.1973). Rule 286 requires that after the jury has retired, they shall be returned to the courtroom to submit questions they may have, in writing, and any further instruction given shall be in writing and in conformity with the rules relating to the charge.

We do not find *Cross* to be controlling here. The errors committed by the trial court in *Cross* were numerous: the court approved an agreement between counsel that objections to the charge could be made while the jury was deliberating; the court orally communicated with the jury in the hallway; the court abused its discretion in failing to correct the wording of a special issue by written instruction; the errors resulted in a conflict in the jury's answers; and the court disregarded the jury's answer to certain special issues. We do not find that the Texas Supreme Court in *Cross* has overruled the decision in *Colls v. Price's Creameries, Inc.*, 244 S.W.2d 900 (Tex.Civ. App.—El Paso 1951, writ ref'd n. r. e.).

The holding in *Colls* was that the requirement of bringing the jury into the courtroom to read to them further written instructions may be waived when both parties expressly agree with the court that the written instructions may be delivered to the jury room by the bailiff. As previously indicated, all parties in our case acquiesced in the procedure suggested by the court. They may not now complain of that procedure. Appellants' fourth point is overruled.

■ Appellants contend in their first point that the trial court committed fundamental error in ruling and trying this libel action on the basis that appellee, the San Antonio Light, had the right to publish this article about a private individual as a public interest article. They further contend that no privilege exists in the law to publish any matters concerning a private individual. The essence of appellants' contention is that *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1975), should be

controlling in the determination of the rights and duties of the parties herein, as opposed to the decision in *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). It is appellants' view that *Gertz* affords a more lenient standard for recovery by a plaintiff than does *Rosenbloom*. But as shown by the following, the standard of recovery used by the trial court was not what precluded the appellants from prevailing.

As we have mentioned, the jury answered "None" to the inquiry in Special Issue No. 9 about actual damages. That issue reads in part as follows:

"Special Issue No. 9

What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence would reasonably compensate Mary Garza for the injuries, if any, which you find from a preponderance of the evidence she may have sustained to her reputation, and for the mental anguish and humiliation, if any, which she may have sustained as a proximate result of the publication of the article admitted in evidence as Plaintiffs' Exhibit No. 2?"

■ The jury did award $25,000.00 as exemplary damages. But exemplary damages may not be awarded where actual damages are not shown. *Girard v. Moore*, 86 Tex. 675, 26 S.W. 945, 946 (1894); *First Texas Prudential Ins. Co. v. Moreland*, 55 S.W.2d 616, 621 (Tex.Civ.App.—Beaumont 1932, writ dism'd). Thus, appellants would not be entitled to recover here under either *Gertz* or *Rosenbloom*.

Appellants also urge in their first point that the trial court erred in ruling as a matter of law during the course of the trial that the complained of article concerned a matter of public or general concern. We find it is unnecessary to decide whether the trial court was correct in this regard, because it does not appear from the record that appellants were harmed thereby. The jury was not made aware of the court's

ruling, and the judgment is not based on that ruling. The appellants have not discharged their burden of showing that the alleged error amounted to such a denial of rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *City of Galveston v. Hill*, 151 Tex. 139, 246 S.W.2d 860 (1952); Rule 434, T.R.C.P. Appellant's first point is overruled.

The judgment of the trial court is affirmed.