Jesus M. CORTEZ, On Behalf of the
ESTATE OF Carmen PUENTES,
Deceased, Appellant,

v.

HCCI–SAN ANTONIO, INC., d/b/a Alta
Vista Nursing Center; Alta Vista
Nursing Center; Altman Nursing, Inc.
d/b/a Alta Vista Nursing Center;
Hunter Care Centers, Inc. d/b/a Alta
Vista Nursing Center; and Jerry Tris-
tan; Appellees.

No. 04–02–00536–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 7, 2004.

From the 285th Judicial District Court, Bexar County, Texas, Trial Court No. 1995–CI–12856; Janet P. Littlejohn, Judge Presiding.[1]

Keith C. Livesay, Livesay Law Office, McAllen, J. Thomas Rhodes, III, Lyons & Rhodes, P.C., San Antonio, Stephen S. Hornbuckle and Thomas S. Hornbuckle, Law Office Of Thomas Hornbuckle, Houston, for Appellant.

1. The Honorable Michael Peden is the presiding judge of the 285th Judicial District Court of Bexar County, Texas. However, the Honorable Janet P. Littlejohn, presiding judge of the 150th Judicial District Court of Bexar County, presided over the trial and signed the judgment.

Lori D. Proctor and Robert L. Quintanilla, Proctor & Nagorny, P.C., Houston, for Appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from a jury verdict in favor of appellant/plaintiff, Jesus M. Cortez. Plaintiff sued Altman Nursing, Inc.; Jerry Tristan; HCCI–San Antonio, Inc. d/b/a Alta Vista Nursing Center ("HCCI"), and other entities for negligence, gross negligence, common law assault, violations of the Penal Code, and intentional infliction of emotional distress. A jury found Altman Nursing, Inc., Tristan, and HCCI negligent; awarded $9 million in damages; and apportioned liability as follows: Altman Nursing, Inc. 40%, Tristan 20%, and HCCI 40%. The jury also found Altman Nursing, Inc. and Tristan liable for gross negligence, and HCCI liable for assault. Judgment was entered against HCCI and Tristan. A final judgment was also entered against Altman Nursing, Inc. based on a high/low settlement agreement entered into with plaintiff before trial. HCCI tendered its share of the judgment, which plaintiff refused. Plaintiff appeals only the judgment against HCCI and Tristan. We affirm the trial court's judgment as to HCCI–San Antonio, Inc. d/b/a Alta Vista Nursing Home Center. We reverse the trial court's judgment in part as to Jerry Tristan.

## BACKGROUND

Plaintiff is the surviving heir of Carmen Puentes. Carmen was a sixty-two year old woman who was admitted to the Alta Vista Nursing Center ("the facility") on August 14, 1992. Tristan was an employee of the facility. Carmen fell in April 1995 while attempting to transfer herself from her commode to her wheelchair. Carmen sued on August 31, 1995, but died on February 18, 1996 while suit was pending. Altman Nursing, Inc. owned the facility until January 1, 1995 when it was purchased by HCCI.

## DISCHARGE OF VENIREMEMBER

In his first issue, plaintiff asserts the trial court erred in not discharging a veniremember, Mr. Snider. Plaintiff contends the trial court should have discharged Snider as a matter of law because, as an insurance company claims adjustor, he prejudged the merits of the case. Plaintiff asserts the trial court's error harmed him because it forced him to use his final peremptory strike on Snider and accept another objectionable veniremember whom he otherwise would have stricken.[2]

Bias is an inclination toward one side of an issue rather than to the other. *See Goode v. Shoukfeh*, 943 S.W.2d 441, 453 (Tex.1997); *Buls v. Fuselier*, 55 S.W.3d 204, 209 (Tex.App.-Texarkana 2001, no pet.). This disqualification extends to bias or prejudice against the subject matter of the suit as well as against the litigants. *See Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963); *Molina v. Pi-*

---

**2.** HCCI contends plaintiff waived this complaint because he did not advise the trial court of his complaint before exercising his peremptory strikes. Our review of the record indicates plaintiff preserved his complaint by informing the trial court he was prevented from striking other objectionable jurors because he had no additional peremptory challenges. *See Hallett v. Houston Northwest Med. Ctr.*, 689 S.W.2d 888, 889–90 (Tex.1985). The trial court also stated on the record that the complaint was preserved.

gott, 929 S.W.2d 538, 541 (Tex.App.-Corpus Christi 1996, writ denied). To disqualify a potential juror for bias as a matter of law, the record must conclusively show that the potential juror's state of mind led to the natural inference that he or she would not act with impartiality. *Sosa v. Cardenas*, 20 S.W.3d 8, 11 (Tex.App.-San Antonio 2000, no pet.). A juror's indication that he cannot be fair and impartial because his feelings are so strong in favor of a party that he will base his verdict on those feelings and not the evidence supports a successful challenge for cause. *Buls*, 55 S.W.3d at 210; *Sosa*, 20 S.W.3d at 11. If a prospective juror's bias or prejudice for or against a party in a lawsuit is established as a matter of law, the trial court must disqualify that person from service. *See* TEX. GOV'T CODE ANN. § 62.105(4) (Vernon 2003); *Malone v. Foster*, 977 S.W.2d 562, 564 (Tex.1998). If bias or prejudice is not established as a matter of law, whether the juror is sufficiently biased or prejudiced to merit disqualification is a factual determination the trial court must make. *Malone*, 977 S.W.2d at 564; *Buls*, 55 S.W.3d at 209; *Sosa*, 20 S.W.3d at 11.

We review the evidence in the light most favorable to the trial court's finding, and we do not reverse on appeal in the absence of an abuse of discretion. *See Buls*, 55 S.W.3d at 210; *Sosa*, 20 S.W.3d at 11. The need for deference to the trial court is especially critical when reviewing a record that demonstrates uncertainty in a venireperson's responses because the trial court is in the best position to evaluate the prospective juror's sincerity and ability to be fair and impartial. *Goode*, 943 S.W.2d at 453; *Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d 202, 207–08 (Tex.App.-Amarillo 1996, no writ).

Here, Snider was somewhat equivocal on whether he would favor one side over the other. He said that because he was a claims adjustor, he "would be very uncomfortable" sitting on a case that involved an insurance claim and that he might have "preconceived notions" on the nature of the case. However, he said he felt the case "could almost go either way"; and although he would "feel bias," he could not "answer anything for certain." When the court asked Snider if one party started ahead of the other, he replied, "In a way, yes." However, he then stated he was not familiar with this type of case "so that's not a bias I should have." Snider said he would try to listen to all the evidence, follow the court's instructions, and decide the case on the law and evidence.

The record does not conclusively show that Snider's feelings were so strong in favor of a party that he would base his verdict on those feelings and not on the evidence. Therefore, any bias or prejudice on his part was not established as a matter of law. Instead, Snider's responses were equivocal. Accordingly, we defer to the trial court and find no abuse of discretion.

## EXCLUSION OF PLAINTIFF'S EVIDENCE

In his second issue, plaintiff asserts the trial court erred in excluding three Texas Department of Health and Human Services ("TDHHS") records (exhibits 35, 37, and 38). Plaintiff contends these records show the mistreatment Carmen received was not an isolated event and the records were necessary to contradict HCCI's assertion that it was unaware of any mistreatment and that no abuse had ever occurred at the facility.

At trial, plaintiff asked Laurence Abshire, the nursing home administrator at the time Carmen was a patient,[3] whether

3. Lawrence Abshire was the administrator

when the facility was owned by both Altman

he knew his staff would threaten patients who used their call lights. Abshire said he was not aware of that ever happening. Plaintiff's counsel attempted to introduce into evidence exhibits 35 and 38. Exhibit 35, an internal investigation report, indicated that on December 23, 1994(1) an unidentified employee threatened to put poison in the food of an "unknown" patient if the patient used the call light again, (2) the unidentified employee spoke "roughly" to the "unknown" patient, and (3) the unidentified employee failed to promptly answer call lights. Exhibit 38, a TDHHS report dated December 23, 1994, indicated an unidentified nurse's aide often spoke harshly to patients and had a rough manner with patients. Next, plaintiff asked Abshire whether it had been brought to his attention that the staff was taking excessive time in responding to call lights, and he answered he could not remember. Plaintiff's counsel then attempted to introduce into evidence exhibit 37, a TDHHS report dated March 18, 1994 indicating a failure to answer call lights. Each time plaintiff attempted to offer these three documents, the trial court sustained HCCI's objection and did not allow the documents into evidence.

■ We review the exclusion of evidence under an abuse of discretion standard. *McEwen v. Wal–Mart Stores, Inc.,* 975 S.W.2d 25, 27 (Tex.App.-San Antonio 1998, pet. denied). If error exists, the party asserting the error has the burden to show the error probably caused the rendition of an improper judgment. *See* Tex.R.App. P. 44.1(a)(1). To show harm, the excluded evidence must be controlling on a material issue and not cumulative of other evidence. *See Williams Distrib. Co. v. Franklin,* 898 S.W.2d 816, 817 (Tex. 1995) (per curiam).

Assuming without deciding the trial court erred in excluding the exhibits, we must examine the whole record to determine if the erroneous exclusion harmed the plaintiff. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–54 (Tex. 1995). Plaintiff had the burden to show the trial court's rulings prejudiced him. *Id.* Plaintiff has not demonstrated how the trial court's ruling harmed him in view of the jury's finding that HCCI was negligent and committed assault, and its award of $9 million in his favor.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In his third issue, plaintiff asserts the trial court erred in granting a directed verdict on his intentional infliction of emotional distress claim against HCCI and Tristan.

### Survival Cause of Action

■ We first address HCCI's argument that such a claim does not survive Carmen's death. Under the Texas Survival Statute, "[a] cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person...." Tex. Civ. Prac. & Rem.Code Ann. § 71.021(a) (Vernon 1997). The purpose of the statute is to continue a decedent's cause of action beyond death to redress the decedent's estate for decedent's injuries. *Felan v. Ramos,* 857 S.W.2d 113, 118 (Tex.App.-Corpus Christi 1993, writ denied). Thus, the personal injury action survives the injured person's death and may be prosecuted on her behalf. Tex. Civ. Prac. & Rem.Code Ann. § 71.021(b); *Russell v. Ingersoll–Rand,* 841 S.W.2d 343, 345 (Tex.1992). The actionable wrong in a survival action is that which the decedent suffered before death. *Russell,* 841

Nursing, Inc. and HCCI.

S.W.2d at 345. The damages recoverable are those the decedent sustained while alive. *Id.*

No Texas court has addressed whether a claim for intentional infliction of emotional distress is a cause of action that is recoverable under the Texas Survival Statute. However, several federal courts, interpreting the Texas statute, have held that such a claim does not fall within the statute "because that tort does not injure health, reputation, or body." *Plumley v. Landmark Chevrolet, Inc.,* 122 F.3d 308, 311 (5th Cir.1997); *see also Estate of Martineau v. ARCO Chem. Co.,* 203 F.3d 904, 913 (5th Cir.2000) (relying on *Plumley* ); *Andrade v. Chojnacki,* 65 F.Supp.2d 431, 448 (W.D.Tex.1999) (relying on *Plumley* ). The *Plumley* court reached its conclusion after no discussion or analysis, and with only a citation to the Texas Supreme Court's opinion in *Boyles v. Kerr,* 855 S.W.2d 593, 598 (Tex.1993), in which the Supreme Court held that it was "not imposing a requirement that emotional distress manifest itself physically to be compensable." Apparently, the *Plumley* court interprets the Texas Survival Statute as requiring evidence of a physical manifestation.

We do not find *Plumley* persuasive. Texas courts recognize the recovery of mental anguish damages in an action under the Texas Survival Statute. *See Kramer v. Lewisville Mem'l Hosp.,* 858 S.W.2d 397, 403 (Tex.1993); *Bedgood v. Madalin,* 600 S.W.2d 773, 775–76 (Tex. 1980); *Harris County Hosp. Dist. v. Estrada,* 872 S.W.2d 759, 764 (Tex.App.-Houston [1st Dist.] 1993, writ denied); *see also Krishnan v. Sepulveda,* 916 S.W.2d 478, 481 (Tex.1995) (noting that "Texas has authorized recovery of mental anguish damages in virtually all personal injury actions."); *see also Wyler Indus. Works, Inc. v. Garcia,* 999 S.W.2d 494, 510 (Tex.

App.-El Paso 1999, no pet.) (holding that "mental anguish is considered a personal injury under Texas law."). Because a claim for mental anguish, which does not require proof of physical injury, is recoverable under the Survival Statute, we are not prepared to hold that a claim for intentional infliction of emotional distress does not survive the claimant's death. Accordingly, we next consider whether the trial court erred in granting a directed verdict in favor of Tristan and HCCI.

**Plaintiff's Claim Against Tristan**

Plaintiff asserts Tristan assaulted, handled roughly, and verbally abused Carmen, and treated her with hostility.

In reviewing a challenge to a directed verdict, we must determine whether there is any evidence to raise a fact issue. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994). We view the evidence in the light most favorable to the party suffering the adverse judgment, disregarding all contrary evidence and inferences. *Id.* If the record contains any probative and conflicting evidence on a material issue, then the jury should have resolved the issue. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex. 1983). A directed verdict is proper if: (1) the opponent's pleadings are insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Rudolph v. ABC Pest Control, Inc.,* 763 S.W.2d 930, 932 (Tex.App.-San Antonio 1989, writ denied).

To recover damages for intentional infliction of emotional distress, a plaintiff must prove (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plain-

tiff emotional distress; and (4) the resulting emotional distress was severe. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex.1998). The tort of intentional infliction of emotional distress is available only in those situations in which severe emotional distress is the intended consequence or primary risk of the actor's conduct. *Standard Fruit & Vegetable Co.*, 985 S.W.2d at 63, 67. Redress for this tort is available only when the tortfeasor desired or anticipated the plaintiff would suffer severe emotional distress. *Id.* Where emotional distress is solely derivative of or merely incidental to the intended or most likely consequence of the defendant's conduct, recovery for such distress must be had, if at all, under some other tort doctrine. *Id.*

 The Texas Supreme Court has specifically pointed out its trust for juries to resolve factual disputes giving rise to this tort. *Twyman v. Twyman*, 855 S.W.2d 619, 622 (Tex.1993). A jury is free to discredit a defendant's protestations that no harm was intended and to draw necessary inferences to establish intent. *Id.* at 623. With respect to recklessness, a jury may find a defendant acted recklessly if he knows or has reason to know of facts that create a high degree of risk of harm to another, and deliberately proceeds to act, or fails to act, in conscious disregard of, or indifference to that risk. *Id.* at 624.

 Whether a defendant's conduct may reasonably be regarded as extreme and outrageous, however, is a question of law. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). Liability for outrageous conduct should be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Twyman*, 855 S.W.2d at 621.

At trial, Rose Washington, a former health care worker, testified she began her employment at the facility in August 1994. For the first three months, she worked on the same floor and during the same shift as Tristan. Washington thought she first met Carmen sometime in November 1994. Washington testified she witnessed nothing "bad" for the first three or four months of her employment, but sometime in late November or mid-December she witnessed the following events. Washington saw Tristan flip or "slam dunk" Carmen into the bed, while Carmen tried to hold onto her chair. She described Carmen as scared of Tristan. Tristan removed Carmen's call light from her bed or disconnected it from the wall; moved her food out of her reach; and moved a table on which her bedpan sat out of her reach. Reasonable minds could view this behavior as extreme and outrageous especially when directed toward an elderly and disabled woman who is cognizant enough to express fear. The evidence also sufficiently raises an issue of fact on whether Tristan intentionally or recklessly caused Carmen emotional distress and whether the resulting emotional distress was severe. Therefore, the trial court erred in granting a directed verdict in Tristan's favor.

### Plaintiff's Claim Against HCCI

 We do not reach the issue of whether the trial court erred in granting the directed verdict in favor of HCCI because the jury found that Tristan was not acting within the scope of his employment—a finding that plaintiff does not challenge on appeal. In view of this jury finding, any error was harmless.

 Under the doctrine of respondeat superior, a plaintiff may impose liability on an employer for the intentional tort of an employee if the employee's act (1) falls within the scope of the employee's

general authority, (2) was in furtherance of the employer's business, and (3) was for the accomplishment of the objective for which the employee was hired. *See GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 617–18 (Tex.1999) (intentional infliction of emotional distress in employment context); *Wrenn v. G.A.T.X. Logistics, Inc.,* 73 S.W.3d 489, 493 (Tex.App.-Fort Worth 2002, no pet.) (assault); *Soto v. El Paso Nat. Gas Co.,* 942 S.W.2d 671, 680 (Tex. App.-El Paso 1997, writ denied) (assault and intentional infliction of emotional distress); *see also Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 357 (Tex.1971) (negligence). Tortious conduct is within the scope of employment when it is of the same general nature as that authorized or is incidental to that authorized. *GTE Southwest, Inc.,* 998 S.W.2d at 617–18; *Soto,* 942 S.W.2d at 680.

Because the jury's finding that Tristan was not acting within the scope of his employment negated plaintiff's claim against HCCI, any error in a directed verdict in HCCI's favor was harmless. *See Gonzales v. Willis,* 995 S.W.2d 729, 739 (Tex.App.-San Antonio 1999, no pet.) (erroneous directed verdict in favor of employer harmless because plaintiff did not establish that employee committed an actionable tort, thus, employer could not be held liable for negligent hiring even if employer was negligent in hiring, supervising, retaining, and supervising employee); *Ghidoni v. Stone Oak, Inc.,* 966 S.W.2d 573, 585 (Tex.App.-San Antonio 1998, pet. denied) (erroneous directed verdict on plaintiff's conversion of water after termination of lease claim harmless based on jury's failure to find in plaintiff's favor regarding termination of lease).

## JURY INSTRUCTION

■■■ In his fourth issue, plaintiff asserts an instruction given to the jury during closing arguments was in error. During plaintiff's final closing argument, plaintiff's counsel began to argue the following: "What this lady went through after she got out of the hands of that group over there was horrible. That fractured hip immobilized her. It came apart. They had to reoperate. . . ." HCCI interrupted, objecting on the grounds that plaintiff did not fully open during the opening portion of his closing argument. The trial court sustained the objection and instructed the jury "to disregard what occurred after August 8th, 1995." Plaintiff did not object to the trial court's ruling. Although the court did not ask for a response from plaintiff, but instead immediately sustained the objection, plaintiff waived any error by not bringing the alleged error to the court's attention. Instead, plaintiff merely resumed his final closing argument. Accordingly, plaintiff has waived any complaint on appeal.

## HIGH/LOW SETTLEMENT AGREEMENT

■■■ In his fifth issue, plaintiff asserts the trial court erred in reducing the judgment against HCCI and Tristan by the amount of the settlement with Altman Nursing, Inc. because no money was paid to plaintiff before trial. Plaintiff provides no authority to support his assertion that only monies paid before trial may be credited. "The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury. Appellate courts have applied the one satisfaction rule when defendants commit the same act as well as when defendants commit technically differing acts which result in a single injury." *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991). On appeal, plaintiff does not assert HCCI's and Tristan's actions caused an injury to Carmen distinct from that caused by the acts of Altman Nursing, Inc. Therefore,

HCCI and Tristan were entitled to a credit on the judgment.

## MOTION TO DISREGARD JURY'S FINDING

■ In his sixth issue, plaintiff complains about the trial court's granting of a judgment notwithstanding the verdict. No such motion was filed or granted. Instead, the trial court granted HCCI's motion to disregard the jury's answer to question number 4 because it was irrelevant to entry of the judgment and not supported by the evidence. Question number 4 asked, "Do you find any of the parties below committed assault against Carmen Puentes?" A definition of assault followed the question. The jury answered, "Yes" with respect to HCCI and "No" as to Altman Nursing, Inc. and Tristan.

Plaintiff attacks the trial court's ruling on several grounds, most of which misconstrue HCCI's motion to disregard and the basis for the trial court's ruling. Plaintiff contends HCCI waived any conflict in the jury's findings because it did not assert the conflict before the trial court discharged the jury. Plaintiff also contends the answers do not conflict. Neither of these contentions have merit because HCCI did not contend the jury answers conflicted. Next, plaintiff contends HCCI waived any objection to the charge because HCCI failed to raise a specific objection before the charge was read to the jury. This assertion is without merit because HCCI did not assert the jury charge contained error.

■ Instead, HCCI based its motion to disregard on the immateriality of finding number 4. A finding is immaterial only if the trial court should not have submitted the question to the jury or, even if properly submitted, other findings rendered the question immaterial. *See Salinas v. Rafati*, 948 S.W.2d 286, 288 (Tex. 1997). A jury finding may be immaterial if its answer can be found elsewhere in the verdict, or if the finding cannot alter the effect of the verdict. *See Fleet v. Fleet*, 711 S.W.2d 1, 2 (Tex.1986); *Mouton v. Beeline Trucking Co.*, 753 S.W.2d 820, 822 (Tex.App.-Houston [14th Dist.] 1988, no writ). For example, a "none" answer on the damages issue renders the liability issue immaterial. *See Garza v. San Antonio Light*, 531 S.W.2d 926, 929 (Tex.Civ. App.-Corpus Christi 1975, writ ref'd n.r.e.).

There are several jury findings relevant to this discussion. In question number 1, the jury found HCCI negligent. In question number 2, the jury apportioned to HCCI 40% of the negligence that proximately caused injury to Carmen. In question number 4, the jury found that only HCCI assaulted Carmen. Question number 5 asked, "If you answered "Yes" to Question No. 1 *or* to Question No. 4, then answer the following question.... What sum of money would have fairly and reasonably compensated [Carmen] for her pain and mental anguish...." (Emphasis added.) The jury answered $1 million. The jury question on exemplary damages (number 6) was linked only to question number 3 (regarding gross negligence). The jury did not find that HCCI's actions amounted to gross negligence and therefore answered "0" as to HCCI on the exemplary damages question.

A "yes" to either question number 1 or number 4 entitled plaintiff to an award of damages under question number 5. The fact that the jury found that HCCI assaulted Carmen was therefore immaterial because the jury had already answered "yes" to question number 1, and an affirmative answer to question number 4 would not have altered the verdict. A "yes" answer to both question number 1 and 4 or to just one of the questions entitled plaintiff to only $1 million in damages. We

therefore hold the trial court did not err in disregarding the jury's answer to question number 4.

## CUMULATIVE ERROR

In his seventh issue, plaintiff asserts the numerous alleged errors committed by the trial court cumulatively provide sufficient grounds for a new trial. Based on our conclusions above, we overrule this issue.

## CONCLUSION

We reverse the trial court's judgment regarding plaintiff's claim against Jerry Tristan for intentional infliction of emotional distress, and we sever this claim and remand it for further proceedings. We affirm the remainder of the trial court's judgment.

Dissenting opinion by ALMA L. LÓPEZ, Chief Justice.

This case is a good example of the reason the law prohibits a juror, who admits having a bias or prejudice, from being rehabilitated by the efforts of opposing counsel or the trial court. *See White v. Dennison*, 752 S.W.2d 714, 717 (Tex.App.-Dallas 1988, writ denied) (trial court must excuse juror who admits bias or prejudice even where juror is rehabilitated through the efforts of counsel or the court by stating that he would decide the case on the evidence and be fair to both sides); *Gum v. Schaefer*, 683 S.W.2d 803, 808 (Tex.App.-Corpus Christi 1984, no writ) (same); *Carpenter v. Wyatt Const. Co.*, 501 S.W.2d 748, 750 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.) (same). Snider admitted that he had preconceived notions and judgments. As a result, Snider was asked, "And given that fact, can you tell the court that you definitely do have a prejudgment and probably a bias in the case?" Snider responded, "I would feel bias, but, I mean, I can't answer anything

for certain." In my opinion, Snider's admissions reveal a state of mind that leads to a natural inference that he would not act impartially, thereby establishing bias. *Sosa v. Cardenas*, 20 S.W.3d 8, 11 (Tex. App.-San Antonio 2000, no pet.).

The majority opinion quotes extensively from statements made by Snider during efforts by opposing counsel and the court to rehabilitate him. Initially, upon questioning by the trial court, Snider mentions the issue of "lawsuit abuse" and admits that one party would be starting out ahead of the other party before he even got into the jury box. Snider concedes that perhaps his bias is not one he should have, but "[i]t's just there." With regard to whether his training and experience would prohibit him from listening to the evidence from both sides and making a decision, Snider becomes more evasive, stating "You know, I honestly don't know."

Opposing counsel then undertook efforts to rehabilitate Snider. When questioned by one counsel, Snider continued to be evasive and refused to directly answer the question. In response to whether he would listen to the evidence and find that the plaintiff proved his case, Snider stated that he "could try" but he did not have "a yes or no" answer. After another counsel attempted to rehabilitate Snider, he became more equivocal in his responses, stating he was "willing to try" and that he "could try" to listen to the evidence before making a decision regarding the merits of the claim.

The law precludes this court from considering the efforts of counsel and the court to rehabilitate Snider for a good reason. Once a juror admits bias, efforts by opposing counsel and the court to mask that bias by eliciting equivocal answers should not be sufficient to undermine the right to a fair and impartial jury. Because Snider admitted to having a bias, and be-

cause this court should not consider efforts by opposing counsel and the court to rehabilitate him in order to conclude that Snider was "somewhat equivocal," I would sustain Snider's first point of error. Because the majority holds to the contrary, I respectfully dissent.