**Opinion issued July 18, 2024**



In The

# Court of Appeals

For The

## First District of Texas

—————————————

**NO. 01-22-00738-CV**

—————————————

**ELEANOR JOHNSON, Appellant**

**V.**

**SAMUEL W. BIGBY, Appellee**

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-26024**

## MEMORANDUM OPINION

Appellant Eleanor Johnson appeals the trial court's order entered on directed verdict in the suit affecting the parent-child relationship (SAPCR) filed by appellee Samuel W. Bigby. Johnson raises two issues on appeal. First, she contends that the

trial court erred in granting a directed verdict in favor of Bigby because whether (a) a father has voluntarily relinquished actual care, control, and possession of a child; and (b) the parental presumption has been rebutted, are genuine issues of material fact for a jury. Second, she contends that the trial court erred in relying on the Texas Supreme Court's decision in *In re C.J.C.* as a basis for granting the directed verdict. Finding no error, we affirm.

## Background

W.B.[1] was born in Indianapolis in 2016. After his mother, Jennifer, was diagnosed with a brain tumor in 2017, she moved to Texas with W.B. and her other children to live with Johnson, Jennifer's mother and W.B.'s maternal grandmother, so that she could receive treatment at M.D. Anderson Cancer Center in Houston. Following Jennifer's death in January 2019, W.B. continued to live with Johnson.

### A.    Procedural History

On April 30, 2021, Bigby filed a petition to adjudicate parentage seeking to establish the parent-child relationship with W.B., appointment as W.B.'s sole managing conservator, and genetic testing. Johnson answered asserting a general denial.

On July 2, 2021, Johnson filed a counterpetition in the SAPCR requesting that genetic testing be ordered, that she and Bigby be appointed joint managing

---

[1]    We refer to the minor child by his initials to protect his privacy.

conservators, and that she be designated as the conservator with the exclusive right to designate W.B.'s primary residence. Johnson also sought temporary orders requesting that Bigby be ordered to provide child support for W.B. as well as support for his medical and dental needs.

The trial court signed an agreed order for genetic testing of W.B. on July 14, 2021.

On September 7, 2021, the parties executed a Mediated Settlement Agreement–Temporary Orders (MSA). The terms of the MSA provided, among other things, that (1) Bigby is adjudicated W.B.'s father pursuant to genetic testing; (2) the parties address the issues of conservatorship and support at final mediation or trial; (3) W.B. shall reside in Harris County during pendency of the case; and (4) Bigby shall have possession of W.B. upon the parties' mutual agreement or, failing agreement, pursuant to set periods of possession. In May 2022, the parties mediated but the case did not settle.

The trial court signed agreed temporary orders on June 21, 2022.

Bigby filed a notice of nonsuit. The trial court granted nonsuit and dismissed the case on June 14, 2022. Bigby filed a petition/counterpetition to adjudicate parentage on August 18, 2022.

In August 2022, Bigby filed a motion for additional temporary orders and motion to modify temporary orders, alleging that the current possession orders had

become unworkable and requesting that he be appointed sole managing conservator with the exclusive right to determine W.B.'s primary residence.

Johnson amended her petition alleging that Bigby had voluntarily relinquished actual care, control, and possession of W.B. to Johnson for a period of one year or more, a portion of which was within ninety days preceding the date her suit was filed. She requested that she and Bigby be appointed joint managing conservators and that she be designated as the conservator with the exclusive right to determine W.B.'s primary residence. Johnson later filed a brief arguing that the presumption that a parent should be appointed managing conservator of the child under Family Code section 153.131 had been rebutted because Bigby had voluntarily relinquished actual care, control, and possession of W.B.

## B.    The Trial

The trial took place on September 26 and 27, 2022.

Johnson testified that after Jennifer was diagnosed with glioblastoma in 2017, Jennifer and her children moved from Indianapolis to Texas so Jennifer could receive treatment at M.D. Anderson Cancer Center. W.B. was twenty-eight months old when his mother died in January 2019.

Johnson testified that Jennifer married Rasheed Barnett in 2009. After a period of separation, they divorced in 2016. During their separation, Jennifer

4

reconnected with Bigby whom she had known since they were teenagers and became pregnant. W.B. was born on September 4, 2016.

On April 10, 2019, Bigby contacted Johnson through Facebook Messenger. A written copy of his message was admitted into evidence as Petitioner's Exhibit 8. In his message, Bigby, who then lived in Seattle, stated that he had only learned of Jennifer's passing after searching Johnson's and her daughters' Facebook pages. His message stated:

> Jennifer and I planned to take care of things with [W.B.] and establish his rights as my son, but time just flew by. I am not sure what the situation is with the kids currently; but, whatever the case may be, please let me know what I can do to support you and the kids as well as be part of W[.B.]'s life.

Bigby and Johnson remained in contact after Jennifer died. Johnson testified that Bigby did not ask to visit W.B. between his April 10, 2019 message and the Covid lockdown in early 2020, but he asked if he could visit W.B. in June 2021. Johnson testified that Bigby did not see W.B. in person between Jennifer's death in February 2019 and the filing of his suit in April 2021, but that Bigby spoke with W.B. on the phone and visited with him through FaceTime. Johnson testified that Bigby did not request that W.B. undergo genetic testing but that he asked about "establishing his rights." Johnson testified that Bigby asked to have W.B.'s last name changed to Bigby. She testified that Bigby provided financial support for W.B. every

two to four weeks. Johnson and Bigby agreed that Johnson would take W.B. for genetic testing. She testified that the results showed that Bigby was W.B.'s father.

Following mediation, Bigby and Johnson agreed on the terms of Bigby's periods of possession. Bigby visited with W.B. in October 2021. Johnson testified that no issues with visitation arose until Memorial Day weekend in May 2022, when Bigby did not return W.B. to her as agreed. After she was repeatedly unable to reach Bigby, she flew to Washington State. Following several court proceedings there, Johnson was ultimately able to return to Texas with W.B. W.B. has lived continuously with Johnson, her daughter, Samantha, Samantha's daughter, and W.B.'s three siblings since his mother's death. Johnson testified that she would like W.B. to continue living with her and his siblings and for Bigby and W.B.'s stepmother to remain a part of his life.

At the conclusion of Johnson's direct examination, Bigby's counsel moved for a directed verdict. She argued that the trial court had previously found that Bigby was "not unfit," and there was no evidence that Bigby was a parent who voluntarily relinquished actual care, control, and possession of W.B. She argued that the trial court had adjudicated Bigby as W.B.'s parent, and she asked that the court award primary sole possession of W.B. to Bigby. In response, Johnson's counsel argued that she had presented sufficient evidence showing that Bigby knew he was W.B.'s father. She asserted that because Bigby was a parent who had voluntarily

6

relinquished actual care, control, and possession of W.B. to Johnson, a non-parent,

she had rebutted the parental presumption.

At the conclusion of counsels' arguments, the trial court stated:

The law defines "parent." There is a legal definition of a "parent." The law defines "voluntary relinquishment." There are particular parties that must be involved in the act of voluntarily relinquishing.

This case has not met the burden.

Paternity was established by this Court when the Petitioner was adjudicated as the father. When paternity was adjudicated, he became a parent. Actions that were taken prior to adjudication of paternity are irrelevant because the statute is very clear that voluntary relinquishment must occur by a parent to a non-parent and the Legislature has made it very clear who a parent is.

. . . .

The Court finds, because of the clear language in the Family Code, that Mr. Bigby did not voluntarily relinquish care, control, and possession of the child, subject of this suit, after he was established as the parent in this case. Because there is a parental presumption that exists—and it is a heightened burden; and even more so after *C.J.C.*, that has not been overcome with the testimony presented by the Petitioner prior to the Petitioner resting her case.

Therefore, the Court grants the directed verdict and awards sole managing conservatorship to the Respondent, Mr. Bigby.

The trial court signed its Order in Suit Affecting Parent-Child Relationship on

October 5, 2022, and it stated, in part, as follows:

7

*Adjudication of Parentage*

Samuel Bigby was adjudicated to be the father of W[.] B[.] by order of this Court on June 21 , 2022, and that order established the parent-child relationship for all purposes.

*Conservatorship*

The Court finds that Samuel Bigby is a fit parent and Eleanor Johnson did not rebut the parental presumption. Therefore the Court issued a directed verdict denying Petitioner/Counterrespondent Eleanor Johnson's relief in [its] entirety and granting Respondent/Counterpetitioner Samuel Bigby's request to be named sole managing conservator of the child the subject of this suit.[2]

This appeal followed.

## Discussion

In her first issue, Johnson contends that the trial court erred in granting a directed verdict in favor of Bigby because whether a father has voluntarily relinquished care, control, and possession of his child and the parental presumption has been rebutted are genuine issues of material fact for a jury. In her second issue,

---

[2] There appears to be some discrepancy about when the trial court first determined that Bigby was a fit parent. At oral argument, Johnson's appellate counsel stated that the trial court made the determination after it granted the directed verdict. However, in arguing for a directed verdict, Bigby's counsel at trial stated that the trial court had previously found that Bigby was a fit parent during earlier proceedings involving W.B. brought under the Uniform Child Custody Jurisdiction and Enforcement Act in Washington State. *See* TEX. FAM. CODE § 152.101. After granting the directed verdict in Bigby's favor, the trial court observed: "I cannot interfere, as the State, and tell you how to parent your child because I have determined you are a fit parent."

8

she contends that the trial court erred in relying on the Texas Supreme Court's decision in *In re C.J.C.* as a basis for granting the directed verdict.[3]

## A.     Standard of Review

A trial court may direct a verdict either when a plaintiff fails to present evidence raising a fact issue essential to its right of recovery or when the evidence conclusively proves a fact that establishes the movant's right to judgment as a matter of law. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Cortez v. HCCI–San Antonio, Inc.*, 131 S.W.3d 113, 120 (Tex. App.—San Antonio 2004), *aff'd*, 159 S.W.3d 87 (Tex. 2005).

In reviewing the granting of a directed verdict, we follow the standard of review for assessing the legal sufficiency of the evidence. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996); *see generally City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). In reviewing the trial court's granting of an instructed verdict, the evidence must be considered in the light most favorable to the party against whom the verdict is instructed. *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex. 1988). We must determine if there is any conflicting evidence of probative value that raises a material fact issue. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983). If there is any such evidence on any theory of recovery, a

---

[3]     Johnson did not argue at trial, nor does she assert on appeal, that Bigby's suit was time barred.

determination of that issue is for the jury. *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 649 (Tex. 1994). However, if there is no evidence of probative force on a material, requisite fact, a directed verdict is proper. *Castelan v. Gerard*, No. 01-16-00463-CV, 2018 WL 2727781, at \*2 (Tex. App.—Houston [1st Dist.] June 7, 2018, no pet.) (mem. op.) (citing *Columbia/HCA of Hous., Inc. v. Tea Cake French Bakery & Tea Room*, 8 S.W.3d 18, 22 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)).

## B.  Governing Law

"The United States Supreme Court has long held that the Constitution 'protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'" *In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) (quoting *Troxel v. Granville*, 530 U.S. 66 (2000) (plurality op.)). Texas courts have recognized that this fundamental right gives rise to a "legal presumption" that it is in a child's best interest to be raised by his or her parents. *Id.* at 812.

In 1995, the Texas Legislature enacted a statutory parental presumption in original custody determinations.[4] Texas Family Code section 153.131 provides, in relevant part:

> [U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or

---

[4]     *See* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 149 (codified at TEX. FAM. CODE § 153.131).

both parents shall be appointed as joint managing conservators of the child.

TEX. FAM. CODE § 153.131.[5]

However, the parental presumption may be rebutted. Section 153.373 provides that the presumption that a parent should be appointed as managing conservator of a child is rebutted if the court finds that:

(1) the parent has voluntarily relinquished actual care, control, and possession of the child to a nonparent, a licensed child-placing agency, or the Department of Family and Protective Services for a period of one year or more, a portion of which was within 90 days preceding the date of intervention in or filing of the suit; and

(2) the appointment of the nonparent, agency, or Department of Family and Protective Services as managing conservator is in the best interest of the child.

*Id.* § 153.373.

Family Code section 101.024(a) defines "parent" as:

[T]he mother, a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, or an adoptive mother or father.

*Id.* § 101.024.

---

[5] The parental presumption is subject to Section 153.004, which prohibits the court from appointing joint managing conservators "if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child." TEX. FAM. CODE § 153.004(b). No such evidence was presented in this case.

11

## C. Voluntary Relinquishment

Johnson argues that the trial court erred when it directed a verdict in Bigby's favor because whether a father has voluntarily relinquished actual care, control, and possession of his child and, therefore, whether the parental presumption has been rebutted, are genuine issues of material fact for a jury.[6] She argues that the evidence at trial showed that Bigby has acknowledged W.B. as his son since birth and, therefore, a jury could have found that Bigby voluntarily relinquished the actual care, control, and possession of W.B. to Johnson in the more than two years between Jennifer's death (January 2, 2019) and the date Bigby filed suit (April 30, 2021).

Bigby responds that none of the definitions of "parent" applied to him prior to June 21, 2022, the date when the trial court adjudicated him to be W.B.'s father. Rather, he argues, he was only W.B.'s alleged father, which is not included in the definitions of "parent." Therefore, he could not have voluntarily relinquished actual care, control, and possession of W.B. for purposes of rebutting the parental presumption under Family Code section 153.373.

"It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose." *City of Richardson v. Oncor Elec.*

---

[6] Johnson did not argue in the trial court, nor does she argue on appeal, that the parental presumption did not apply because appointment of Bigby as managing conservator would significantly impair W.B.'s physical health or emotional development or that Bigby exhibited a history of family violence. *See* TEX. FAM. CODE § 153.131. We therefore limit our discussion to voluntary relinquishment.

*Delivery Co.*, 539 S.W.3d 252, 260 (Tex. 2018). Concomitantly, "every word excluded from a statute must also be presumed to have been excluded for a purpose." *Id.* "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE § 311.011(b).

As relevant here, Family Code section 101.024(a) defines "parent" in four ways with regard to fathers: (1) a man presumed to be the father, (2) a man legally determined to be the father, (3) a man who has been adjudicated to be the father by a court of competent jurisdiction, and (4) a man who has acknowledged his paternity under applicable law. *See* TEX. FAM. CODE 101.024(a).

### 1. "Presumed Father"

Under Section 160.204(a), a man is a "presumed father" if:

(1) he is married to the mother of the child and the child is born during the marriage;

(2) he is married to the mother of the child and the child is born before the 301st day after the date the marriage is terminated by death, annulment, declaration of invalidity, or divorce;

(3) he married the mother of the child before the birth of the child in apparent compliance with law, even if the attempted marriage is or could be declared invalid, and the child is born during the invalid marriage or before the 301st day after the date the marriage is terminated by death, annulment, declaration of invalidity, or divorce;

(4) he married the mother of the child after the birth of the child in apparent compliance with law, regardless of whether the marriage is or could be declared invalid, he voluntarily asserted his paternity of the child, and:

13

(A) the assertion is in a record filed with the vital statistics unit;

(B) he is voluntarily named as the child's father on the child's birth certificate; or

(C) he promised in a record to support the child as his own; or

(5) during the first two years of the child's life, he continuously resided in the household in which the child resided and he represented to others that the child was his own.

*See* TEX. FAM. CODE § 160.204.

Johnson testified that Jennifer was married to Rasheed Barnett from 2009 to 2016. She testified that Jennifer and Bigby had a relationship during her separation from Barnett, and that Jennifer became pregnant. There was no evidence presented that Bigby and Jennifer were married at any time or that Bigby "continuously resided in the household in which the child resided" during the first two years of W.B.'s life. Bigby is not a presumed father. *See* TEX. FAM. CODE § 160.204.

### 2. "Legally Determined Father"

Section 101.024(a) defines "parent" in pertinent part as "a man legally determined to be the father." *Id.* 101.024(a). We have found no further statutory or case-law definition of what it means to be a "legally determined father," and Johnson does not argue that Bigby was the legally determined father. The trial court entered Agreed Temporary Orders in Suit Affecting the Parent-Child Relationship on June 21, 2022, stating that "the parent-child relationship between [Bigby] and [W.B.] is

14

established." Because Bigby was not determined to be W.B.'s father before June 21, 2022, he could not have voluntarily relinquished the actual care, control, and possession of W.B. to Johnson for the purposes of Section 153.373 prior to that date.

### 3. "Adjudicated Father"

Section 101.024(a) defines "parent" in relevant part as "a man who has been adjudicated to be the father by a court of competent jurisdiction." TEX. FAM. CODE § 101.024(a). A man may be adjudicated a father in a proceeding under Chapter 160, Subchapter G. *See id.* § 160.601. In its Agreed Temporary Orders in Suit Affecting the Parent-Child Relationship signed on June 21, 2022, the trial court stated that Bigby "is adjudicated as the father of [W.B.]." and the parent-child relationship between [Bigby] and [W.B.] is established."[7] Because this statutory definition of parent did not apply to Bigby before June 2022, it is similarly unavailing for the purposes of finding that Bigby voluntarily relinquished the actual care, control, and possession of W.B. to Johnson "for a period of one year or more, a portion of which was within 90 days preceding the date of intervention in or filing of the suit."

---

[7] Although Bigby states in his appellate brief that he was adjudicated as W.B.'s father on June 21, 2021, the trial court signed the order on June 21, 2022.

### 4. "Acknowledged Father"

Johnson argues that Bigby meets the fourth definition of "parent" because he has acknowledged W.B. as his son since his birth.[8] She asserts that a jury could therefore have found that Bigby voluntarily relinquished the actual care, control, and possession of W.B. to Johnson in the more than two years between Jennifer's death and the date Bigby first filed suit.

Section 101.024(a) defines "parent" in relevant part as a man who has acknowledged his paternity under applicable law. *See* TEX. FAM. CODE 101.024(a). An "acknowledged father" is, in turn, defined as "a man who has established a father-child relationship under Chapter 160." *Id.* § 101.0010. Section 160.301 provides that "[t]he mother of a child and a man claiming to be the biological father of the child may sign an acknowledgment of paternity with the intent to establish the man's paternity." *Id.* § 160.301. Under Section 160.302, an acknowledgement of paternity must, among other things, be in a record and signed, or otherwise authenticated, under penalty of perjury by the mother and the man seeking to establish paternity. *See id.* § 160.302.[9] Although the evidence showed that Jennifer

---

[8]    Johnson does not argue that Bigby meets the first, second, or third definitions of "parent" under Family Code section 101.024 in her main brief on appeal.

[9]    **§ 160.302. Execution of Acknowledgment of Paternity**

(a) An acknowledgment of paternity must:

(1) be in a record;

16

and Bigby had planned to establish Bigby's paternity before she died, there is no evidence that they signed an acknowledgement of paternity with the intent to establish Bigby's paternity. Bigby is not an "acknowledged father." *See id.*

Bigby contends that, at most, he could be considered W.B.'s alleged father prior to adjudication because he and Jennifer alleged that he was the genetic father or the possible genetic father of W.B. *See* § 101.0015(a) (defining "alleged father" as "a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined."). We agree. An alleged father, however, is not among the definitions of "parent" under

---

(2) be signed, or otherwise authenticated, under penalty of perjury by the mother and the man seeking to establish paternity;

(3) state that the child whose paternity is being acknowledged:

   (A) does not have a presumed father or has a presumed father whose full name is stated; and

   (B) does not have another acknowledged or adjudicated father;

(4) state whether there has been genetic testing and, if so, that the acknowledging man's claim of paternity is consistent with the results of the testing; and

(5) state that the signatories understand that the acknowledgment is the equivalent of a judicial adjudication of the paternity of the child and that a challenge to the acknowledgment is permitted only under limited circumstances.

TEX. FAM. CODE § 160.302.

17

Section 101.024 and, therefore, cannot satisfy the burden to rebut the parental presumption under Section 153.373.

Johnson urges us to consider different Family Code provisions for determining when a parent is a parent. She points to Section 154.131, which provides that in determining whether to order an obligor to pay retroactive child support, a court shall consider whether "the obligor had knowledge of his paternity or probable paternity." *Id*. at § 154.131(b)(2). The provision further provides that the presumption created under that section can be rebutted by evidence that the obligor "knew or should have known that the obligor was the father of the child for whom support is sought and sought to avoid the establishment of a support obligation to the child." *Id*. § 154.131(d). Johnson reasons that because a father can admit his parentage through actions and words such as an informal acknowledgment or participation in the child's life under the retroactive child support provision, it should apply equally to the circumstances here. She argues that such a voluntary acknowledgment is also considered by the courts in involuntary parental termination proceedings brought under Section 161.001, and that "courts have held that a father who makes it clear to the state that they believe they are the father of the child is a sufficient acknowledgement to force the state to pursue termination" under Section 161.001. We are not persuaded.

18

The statutory parental presumption under Section 153.373 involves "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. By contrast, when resolving questions regarding child support, the trial court's primary consideration is the best interest of the child. *See In re D.T.M.*, No. 01-01-00241-CV, 2002 WL 31521151, at *2 (Tex. App.—Houston [1st Dist.] Nov. 14, 2002, no pet.) ("The best interest of the child is the court's primary consideration in determining questions of managing conservatorship of, possession of, and support of and access to a child."); *In re Doe*, 917 S.W.2d 139, 141 (Tex. App.—Amarillo 1996, writ denied) (noting that "[w]hen courts resolve questions regarding conservatorship and child support, the best interest of the child is the primary consideration"). As to termination proceedings brought under Section 161.001, the statute explicitly provides for the termination of the rights of an alleged father. *See id.* § 161.002 ("[T]he procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged father."). That is not the case here.

Because none of the definitions of "parent" under Section 101.024 applied to Bigby prior to June 21, 2022 when he was adjudicated as W.B.'s father by the trial court, he could not have voluntarily relinquished care, control, and possession of W.B. for the purposes of rebutting the parental presumption under Section 153.373. *See* TEX. FAM. CODE §§ 101.024, 153.373.

19

**D.** *In Re C.J.C.*

In her second issue, Johnson contends that the trial court erred in relying on the Texas Supreme Court's decision in *In re C.J.C*, 603 S.W.3d 804 (Tex. 2020), which concerned modification proceedings, as a basis for granting the directed verdict in this case. Bigby responds that the trial court did not rely on *In re C.J.C.* as the basis for its decision, but that it could nevertheless be guided by the Court's discussion of the fit parent presumption in making its ruling.

*In re C.J.C.* involved a private custody dispute between the child's father, maternal grandparents, and the mother's fiancé following the mother's death. *See* 603 S.W.3d at 808–09. The trial court, over the father's objection, entered a temporary order granting the mother's fiancé possessory conservatorship. *Id.* at 810. Although the trial court made a finding that this arrangement was in the child's best interest, there was no allegation or finding of parental unfitness against the father; to the contrary, the father's fitness was uncontested. *Id.* The mother's fiancé and the father disagreed as to whether the father could rely on the fit parent presumption to block the fiancé from obtaining custody rights through the father's preemptory objection to the custody arrangement because, unlike the Texas Family Code provision dealing with initial custody determinations, the statute dealing with custody modification proceedings did not explicitly provide for the application of the fit-parent presumption. *Id.* at 813, 816–17. The question before the Court was

whether the father was nevertheless entitled to the fit parent presumption despite the fact that the statute did not call for the presumption to be applied. *See id.* The Court held that, even in the absence of an explicit statutory directive, the trial court in a custody modification proceeding must still make a predicate finding of parental unfitness before granting a non-parent custody rights over the objection of the presumptively fit managing conservator parent. *Id.* at 813–14, 818–19.

Here, at the conclusion of trial, the trial court stated:

> The law defines "parent." There is a legal definition of a "parent." The law defines "voluntary relinquishment." There are particular parties that must be involved in the act of voluntarily relinquishing.

> This case has not met the burden.

> Paternity was established by this Court when the Petitioner was adjudicated as the father. When paternity was adjudicated, he became a parent. Actions that were taken prior to adjudication of paternity are irrelevant because the statute is very clear that voluntary relinquishment must occur by a parent to a non-parent and the Legislature has made it very clear who a parent is.

> The Court finds, because of the clear language in the Family Code, that Mr. Bigby did not voluntarily relinquish care, control, and possession of the child, subject of this suit, after he was established as the parent in this case. Because there is a parental presumption that exists—and it is a heightened burden; and even more so after *C.J.C.*, that has not been overcome with the testimony presented by the Petitioner prior to the Petitioner resting her case.

Johnson asserts that the trial court "found that the ruling in *In re C.J.C.* was dispositive of the issues in this case . . . and ruled that *In re C.J.C.* created a "heightened burden" to overcome the "fit parent" presumption. We disagree. To the

contrary, the trial court's ruling was based on its finding that Johnson had not met her burden to show that Bigby met the statutory definition of "parent" for purposes of rebutting the parental presumption. Nothing in its ruling suggests that it relied on *In re C.J.C.* to impose an improper burden on Johnson.

Viewing the evidence in the light most favorable to Johnson, we conclude that there is no evidence of probative force on a material, requisite fact essential to Johnson's right to recovery. The trial court did not err in granting Bigby's motion for directed verdict. *See Szczepanik*, 883 S.W.2d at 649; *Castelan*, 2018 WL 2727781, at *2.[10] Accordingly, we overrule Johnson's issues.

---

[10] Following its ruling, the trial court noted that Johnson had not filed any pleadings requesting access to W.B. The "grandparent access statute" provides, in relevant part, that:

> (a) The court may order reasonable possession of or access to a grandchild by a grandparent if:
>
> > (1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;
> >
> > (2) the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and
> >
> > (3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:
> >
> > . . .
>
> (C) is dead . . . .

22

## Conclusion

We affirm the trial court's order.

Amparo Monique Guerra
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

---

TEX. FAM. CODE § 153.433(a).