*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-08-00169-CV

**FLYING J INC.**,
Appellant

v.

**MEDA, INC.** d/b/a AAA Auger,
Appellee

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 302723
Honorable David J. Rodriguez, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:       Catherine Stone, Chief Justice
               Rebecca Simmons, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  May 16, 2012

AFFIRMED

Appellee Meda, Inc. sued appellant Flying J, Inc. for breach of contract.  Flying J counterclaimed for breach of contract, breach of implied warranty, and negligence.  On appeal, Flying J asserts (1) the trial court improperly directed a verdict against Flying J's breach of contract cause of action, (2) the trial court impermissibly commented on the weight of the evidence, (3) the trial court erroneously directed a verdict and refused to submit an issue to the jury on Flying J's breach of implied warranty cause of action, and (4) the evidence was legally

and factually insufficient to support the jury's findings of negligence and apportionment of fault. We affirm the trial court's judgment.

## BACKGROUND

Flying J, a gasoline retailer, contracted with Meda, a plumbing company, to repair a water line at a Flying J facility. Meda performed work on the water line in July of 2001 and February of 2002. On these occasions Meda became aware that the water line was located in the same trench as and in close proximity to a diesel line. In the form of written proposals, Meda twice recommended that the water line be moved away from the diesel line to avoid potential water contamination problems. Flying J refused to implement these proposals.

Meda was again called to repair the leaking water line on June 17, 2002. Meda witnesses testified that on June 18 while excavating, Meda asked a Flying J manager to turn off the water supply to increase visibility in the excavated area and to enable construction of a cement thrust block that would strengthen the plumbing repairs. Meda witnesses testified that Flying J refused to shut off the water; Flying J disputes this testimony. Meda made the repairs to the existing water line and discovered a new leak further down the pipe. Meda began further excavation of the trench to make the replacement. There was testimony that Flying J's manager instructed the Meda plumbers to use a backhoe to expedite the repairs. Meda used the backhoe, which scraped the diesel line, and created a small puncture in the fuel line.

Meda temporarily halted its work while a third party repaired the fuel line. A Meda witness testified that the water line was repaired within twenty-four hours of puncturing the diesel line. The amount of diesel that spilled was hotly disputed at trial. Meda contends only several cups escaped the line and presented evidence that there was diesel in the trench before the diesel line was punctured. Meda also submitted evidence of past diesel spills and Texas

Commission on Environmental Quality reports that indicated Flying J had prior environmental remediation performed at that location for hydrocarbon contamination. Flying J contends twenty-five gallons of fuel leaked from the punctured line and that any prior diesel spills had been completely remediated before Meda hit the diesel line.

Despite the problems with the punctured diesel line, Flying J asked Meda to return on July 20, 2002, to move the water line out of the same trench as the diesel line—essentially the services proposed months earlier. Meda completed this work and submitted invoices for the services rendered. Flying J refused to pay on all work performed on and after June 17, 2002, contending that Meda caused property damages in excess of the amount owed for plumbing services.

Meda brought suit for breach of contract; Flying J counterclaimed for breach of contract, breach of implied warranty, and negligence. The trial court granted a partial directed verdict in favor of Meda and dismissed Flying J's breach of contract and breach of implied warranty causes of action. Meda's breach of contract and Flying J's negligence causes of action were submitted to the jury. The jury awarded Meda damages for Flying J's breach of contract. On the negligence claim, the jury found Flying J 80% responsible for damage to the fuel line and Meda 20% responsible. The trial court rendered judgment, and Flying J appeals.

### FLYING J'S BREACH OF CONTRACT CLAIM

Flying J contends the trial court improperly granted a directed verdict against Flying J's breach of contract claim. Flying J claims that Meda breached the contract as a matter of law and the damage to the diesel line gave rise to both breach of contract and tort causes of action. Meda responds that because the diesel line was not part of the subject matter of the contract, Flying J's cause of action sounds solely in tort.

### A. Standard of Review of a Directed Verdict

"In reviewing a directed verdict, we decide whether there is any evidence of probative value to raise an issue of material fact on the question presented, and we review the evidence in the light most favorable to the person suffering the adverse judgment." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 220 (Tex. 2011); *accord Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978); *State Office of Risk Mgmt. v. Martinez*, 300 S.W.3d 9, 12 (Tex. App.—San Antonio 2009, pet. denied). If a fact issue is raised on a material question, a directed verdict is not proper and the issue must go to the jury. *See Exxon Corp.*, 348 S.W.3d at 220–21; *Collora*, 574 S.W.2d at 68; *Martinez*, 300 S.W.3d at 12.

### B. The "Contort" Distinction

Determining whether a cause of action sounds in tort or contract is often difficult. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617 (Tex. 1986); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (Gonzalez, J., concurring) ("We have muddled the law of 'contorts' and an all encompassing bright line demarcation of what constitutes a tort distinct from breach of contract has proven to be elusive."). To determine whether Flying J's cause of action sounds in contract, tort, or both, it is instructive to examine the progression of case law regarding the contract-tort distinction.

In *Montgomery Ward & Co. v. Scharrenbeck*, the Texas Supreme Court noted, "Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, *as well as* a breach of the contract." 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947) (emphasis added) (citation and internal quotation marks omitted).

In *Jim Walter Homes*, the court clarified and seemingly narrowed the "as well as" language used in *Scharrenbeck*. *See Jim Walter Homes*, 711 S.W.2d at 617–18. The court stated, "The contractual relationship of the parties may create duties under both contract and tort law. The acts of a party may breach duties in tort or contract *alone* or simultaneously in both. The nature of the injury most often determines which duty or duties are breached." *Id.* at 618 (emphasis added) (citations omitted).

In *DeLanney*, the court further advanced the progression of contort jurisprudence by adopting a two-part test for determining whether a party's cause of action sounds in contract, tort, or both. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991). A court (1) looks at the source of the duty giving rise to the injury, and (2) looks to the nature of the injury. *Id.*

> Regarding the source of the duty:
>
> If the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*Id.* at 494; *see also Peco Constr. Co. v. Guajardo*, 919 S.W.2d 736, 738 (Tex. App.—San Antonio 1996, writ denied); *see also Richardson v. Bigelow Mgmt., Inc.*, No. 05-06-00213-CV, 2007 WL 1139775, at *4 (Tex. App.—Dallas Apr. 18, 2007, no pet.) (mem. op.) (affirming a summary judgment disposing of a contract claim where the alleged breach of duty arose from common law, not the contract, and therefore the plaintiffs claim sounded in tort).

As to the nature of the injury, a plaintiff's cause of action is ordinarily contractual if the only loss or damage is to "the subject matter of the contract." *See DeLanney*, 809 S.W.2d at 494; *Jim Walter Homes*, 711 S.W.2d at 618. Generally, in the context of a contract for the sale of goods, the subject matter of the contract is the product itself. *See Mid Continent Aircraft Corp.*

*v. Curry Cnty. Spraying Serv., Inc.*, 572 S.W.2d 308, 312–13 (Tex. 1978) ("Distinguished from personal injury and injury to other property, damage to the product itself is essentially a loss to the purchaser of the benefit of the bargain with the seller."); *see also Equistar Chems., L.P. v. Dresser–Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007). In the context of a service contract, the subject matter of the contract generally does not include other property that is not a part of the contract. *See Goose Creek Consol. Indep. Sch. Dist. of Chambers & Harris Cntys., Tex. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 495 (Tex. App.—Texarkana 2002, pet. denied) ("[T]he injury [that the damaged party] alleged, the invasion of sewage and sewer gas into the school buildings, constitutes an injury to property that was not the subject matter of the contract, . . . namely the plumbing."); *Thomson v. Espey Huston & Assocs.*, 899 S.W.2d 415, 422 (Tex. App.—Austin 1995, no writ) ("[T]o the extent that the alleged inadequacies caused damage to parts of the property beyond [the parties'] contract, [the damaged party] also has a tort claim.").

## C.  The Directed Verdict Was Not Erroneous

Flying J construes the broad language in *Scharrenbeck* to support its contention that it may sue for damage to the diesel line and the resulting lost profits under either a breach of contract or tort cause of action or both. *See Scharrenbeck*, 204 S.W.2d at 510. However, *Scharrenbeck* is distinguishable. The consumers in *Scharrenbeck* had a negligence claim because their home burned down; they *also* had a breach of contract claim because their water heater was not repaired properly. *See Scharrenbeck*, 204 S.W.2d at 510–511; *see also DeLanney*, 809 S.W.2d at 494 (summarizing *Scharrenbeck* and noting that the failure to repair the water heater properly was a breach of contract and the destruction of the consumers' home was a breach of a common-law duty). These different types of property damage in *Scharrenbeck* explain the court's use of the phrase "as well as."

Contrary to Flying J's contention that *Scharrenbeck*'s language is controlling, analysis under the two-part test adopted in *DeLanney* is the proper approach for determining whether Flying J's remedy sounds in contract, tort, or both. *See DeLanney*, 809 S.W.2d at 494–95.

### 1. Source of the Duty

At trial, Flying J focused on its negligence claim; very little time was spent on the specific nature of Flying J's breach of contract claim against Meda. Both parties agree Meda had a contractual duty to repair Flying J's water line. Meda also had a common law duty to avoid damaging Flying J's other property, and this duty arose independently of the existence of their contract. *See DeLanney*, 809 S.W.2d at 494; *Peco Constr.*, 919 S.W.2d at 738. The issue is whether Meda had a contractual rather than common law duty to avoid contact with the diesel line. Proposals had been submitted by Meda to address the diesel line, but they were not accepted by Flying J prior to the incident. Flying J has failed to address the first prong of the *DeLanney* test altogether and has pointed to no evidence that avoiding contact with the diesel line was a duty that arose from the contract. After reviewing the record, we conclude there is no evidence to support that Meda had a contractual rather than common law duty to avoid contact with the diesel line. Under the source-of-duty test, Flying J's cause of action sounds only in tort. *See DeLanney*, 809 S.W.2d at 494; *Richardson*, 2007 WL 1139775, at *4.

### 2. Nature of the Injury

The damage to Flying J's property was beyond the contract—the bargained for exchange called for repair of a leaking water line in exchange for an agreed upon price. The injury that Flying J alleged was the contamination of its surrounding property caused by damage to its fuel line. However, this damage was not the subject matter of the contract. *See Goose Creek*, 74 S.W.3d at 494–95; *Thomson*, 899 S.W.2d at 422; *cf. Jim Walter Homes*, 711 S.W.2d at 618

(holding that because the homeowners' "injury was that the house they were promised and paid for was not the house they received," they did not have a viable negligence cause of action—i.e., the construction of the home itself was the subject matter of the contract). Thus, the nature of the injury sounds in tort. *See DeLanney*, 809 S.W.2d at 494.

### 3. Conclusion

Analysis under the two-part test set forth in *DeLanney* supports the determination that (1) the duty to avoid damaging Flying J's property arose from a common law duty independently from the existence of the service contract, and (2) the nature of the injury involved damage to property that was not a part of the subject matter of the contract. *See id.* at 494–95. As such, the proper basis for recovery for the damage to Flying J's diesel line was solely in tort. *See id.* Accordingly, the trial court did not err in directing a verdict on the breach of contract issue in favor of Meda. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 220 (Tex. 2011); *State Office of Risk Mgmt. v. Martinez*, 300 S.W.3d 9, 12 (Tex. App.—San Antonio 2009, pet. denied).

## COMMENT ON THE WEIGHT OF THE EVIDENCE

In its next point, Flying J argues that the trial court impermissibly commented on the weight of the evidence when it submitted Meda's questions and instructions on breach of contract because the questions included the actual amounts of the invoices.

### A. Standard of Review

When submitting a charge to the jury, a trial court may not "comment directly on the weight of the evidence or advise the jury of the effect of [its] answers." TEX. R. CIV. P. 277; *Alvarez v. Mo.–Kan.–Tex. R.R. Co.*, 683 S.W.2d 375, 377 (Tex. 1984). Whether a trial court impermissibly comments on the weight of the evidence is a question of law reviewable de novo.

*Schorlemer v. Reyes*, 974 S.W.2d 141, 146 (Tex. App.—San Antonio 1998, pet. denied) (citing

*City of Pearland v. Alexander*, 483 S.W.2d 244, 249 (Tex. 1972)).  A trial court impermissibly

comments on the weight of the evidence when it "indicate[s] the opinion of the trial judge as to

the verity or accuracy of the facts in inquiry."  *In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003)

(citation and internal quotation marks omitted).  However, an incidental comment on the weight

of the evidence is not grounds for reversal unless the error probably caused the rendition of an

improper judgment.  *See* TEX. R. APP. P. 44.1; TEX. R. CIV. P. 277; *Plainsman Trading Co. v.*

*Crews*, 898 S.W.2d 786, 791 (Tex. 1995).

## B.  The Trial Court Did Not Err

Following the directed verdict on Flying J's breach of contract action, the case went to

the jury on Meda's breach of contract action.  It was undisputed that Meda rendered plumbing

services, submitted the amounts on the invoices to Flying J, and a Flying J manager signed the

invoices.[1]  Further, the invoices at issue were admitted into evidence.  The parties did not dispute

the amount of the invoices.  Thus, the inclusion of the invoice amounts was not erroneous as they

were not factually disputed.  *See* TEX. R. CIV. P. 302; *Chilton Ins. Co. v. Pate & Pate Enters.,*

*Inc.*, 930 S.W.2d 877, 895 (Tex. App.—San Antonio 1996, writ denied).  As a result, there was

no impermissible comment on the weight of the evidence.  Therefore, the trial court did not err.

Even if the trial court's charge could be construed as a comment on the evidence, the use

of the phrase in question 2, "What some of money, *if any*, . . . would fairly compensate Meda,"

would have mitigated any perceived comment on the evidence.  (emphasis added).  *See Rowe v.*

*Rowe*, 887 S.W.2d 191, 200 (Tex. App.—Fort Worth 1994, writ denied).  Moreover, both paid

and unpaid invoices were introduced into evidence to establish the two parties' prior history of

---

[1] At trial the parties focused on the potential offsets due to competing breach of contract claims.

transactions.  Identifying the unpaid invoices in the jury question aided the jury in distinguishing paid from unpaid invoices.

Considering the charge in its entirety, we determine that the inclusion of the amounts and invoices in the jury questions was not reasonably calculated to and probably did not cause the rendition of an improper judgment.  *See* TEX. R. APP. P. 44.1; *In re M.S.*, 115 S.W.3d at 538; *see also Rowe*, 887 S.W.2d at 200.

### FLYING J'S BREACH OF IMPLIED WARRANTY QUESTION

Flying J also contends that the trial court erred in (1) granting a directed verdict and dismissing its cause of action for breach of the implied warranty of good and workmanlike service, and (2) failing to submit the issue of breach of implied warranty to the jury.

## A.  Standard of Review

As addressed above, if there is any probative evidence raising a fact issue on a material question, a directed verdict is not proper and the issue must go to the jury.  *See Exxon Corp.*, 348 S.W.3d at 220–21; *Collora*, 574 S.W.2d at 68; *Martinez*, 300 S.W.3d at 12.

A jury question that is raised by the pleadings and evidence shall be submitted to the jury by the court.  TEX. R. CIV. P. 278; *see Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002).  Of particular import in this case, as later discussed, is that a trial court's erroneous refusal to submit an issue to the jury will not be overturned if it is harmless.  *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam); *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex. 1980), *superseded by statute on other grounds*, TEX. CIV. PRAC. & REM. CODE ANN. § 82.005 (West 2005), *as recognized by Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

**B. Implied Warranty of Good & Workmanlike Services**

An implied warranty exists to repair or modify existing tangible goods or property in a good and workmanlike manner. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). "Good and workmanlike" is defined "as that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Id.* This warranty cannot be waived or disclaimed. *Id.* at 355.

Claims for breaches of implied warranty are subject to the proportionate responsibility guidelines of Chapter 33 of the Texas Civil Practice and Remedies Code. *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 705, 707 (Tex. 2008); *see also Cressman Tubular Prods. Corp. v. Kurt Wiseman Oil & Gas, Ltd.*, 322 S.W.3d 453, 460 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *JCW Electronics* and noting that Chapter 33 applies to breach of implied warranty claims for "personal injury, property damages, or death"). Thus, a party whose percentage of responsibility exceeds 50% is barred from recovering on a breach of implied warranty claim. *See JCW Elecs.*, 257 S.W.3d at 707 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 33.001 (West 1995)).

**C. Flying J's Comparative Negligence Bars Recovery**

Here, Flying J submitted probative evidence and raised an issue of fact regarding whether Meda breached the implied warranty to complete its services in a good and workmanlike manner. *Cf. Melody Home*, 741 S.W.2d at 354. Meda's manager admitted at trial that using the backhoe was "stupid" and that his crew should not have used a backhoe near the diesel line. Flying J's expert witness testified that using the backhoe while excavating near the diesel line was not appropriate and was not good and workmanlike. Considering this probative evidence of

breach of the implied warranty, the trial court erred in granting a directed verdict against Flying J's breach of implied warranty. *See Exxon Corp.*, 348 S.W.3d at 220–21; *Collora*, 574 S.W.2d at 68; *Martinez*, 300 S.W.3d at 12. Moreover, because the issue was raised by the pleadings and the evidence, the court erred in refusing to submit the issue to the jury. *See* TEX. R. CIV. P. 278; *Williams*, 85 S.W.3d at 166. Our inquiry does not end here, however.

Generally, courts do not engage in harm analysis when determining whether to reverse a directed verdict where some evidence of a material fact exists. *See, e.g.*, *Collora*, 574 S.W.2d at 68 ("When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury."). "However, in at least one instance, the Texas Supreme Court has held that a procedural error in granting a directed verdict before the close of evidence did not require reversal where no harm was shown." *Martinez*, 300 S.W.3d at 12 (citing *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003)). *See generally* TEX. R. APP. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment . . . ."); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) ("The [harmless error] rule applies to all errors."). Likewise, this court has found that when a jury's finding on one issue precludes recovery on a second issue as a matter of law, any error in directing a verdict on the second issue is harmless. *See Cortez ex rel. Estate of Puentes v. HCCI–San Antonio, Inc.*, 131 S.W.3d 113, 122 (Tex. App.—San Antonio 2004), *aff'd*, 159 S.W.3d 87 (Tex. 2005); *Gonzales v. Willis*, 995 S.W.2d 729, 739 (Tex. App.—San Antonio, 1999 no pet.), *abrogated on other grounds by Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).

In this case the error was harmless because the jury's proportionate responsibility findings bar Flying J's recovery. *See JCW Elecs.*, 257 S.W.3d at 707. The jury apportioned Flying J's fault at 80%; therefore, Flying J was precluded from recovering on its breach of implied warranty cause of action. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 33.001 (West 2008). Accordingly, the trial court's grant of a directed verdict is not reversible error. *See Tana Oil & Gas*, 104 S.W.3d at 82; *Cortez*, 131 S.W.3d at 122. Likewise, the trial court's refusal to submit the issue to the jury will not be overturned. *Shupe*, 192 S.W.3d at 579; *Bailey*, 609 S.W.2d at 750.

### LEGAL & FACTUAL SUFFICIENCY OF THE JURY VERDICT

Flying J also contends that the evidence adduced at trial was legally and factually insufficient to support the jury's apportionment of fault between Meda and Flying J.

### A. Legal Sufficiency

#### 1. *Standard of Review*

When reviewing a legal sufficiency challenge, appellate courts must determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Legal-sufficiency review, therefore, requires this court to give effect to "favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* Reviewing courts are not permitted to impose their own opinions opposing a jury's determination of the credibility of witnesses and the weight afforded their testimony. *Id.* at 819.

#### 2. *The Evidence Was Legally Sufficient*

Meda presented legally sufficient evidence to support the jury's finding of Flying J's 80% comparative negligence. Evidence adduced at trial showed that in February of 2002 Meda

twice advised Flying J that its water line should be removed from the same trench as the fuel line. Flying J refused these proposals. When Meda again repaired the water line in June of 2002, a Meda employee, Joe Tobar, explained to a Flying J manager the importance of turning off the water supply during the repairs. Testimony showed that the Flying J manager refused to comply with the request. As a result, water continued to leak into the trench where the water line was being repaired. This excess leakage decreased visibility in the trench and precluded Meda from using a cement thrust blocker that may have protected the water line. Tobar also testified that while performing the work, a Flying J manager told the Meda employees to "hurry along" and instructed them to use a backhoe instead of using non-machine operated tools. Additional evidence showed that blueprints Flying J gave Meda were defective—the blueprints did not show the actual locations of the water line. We conclude that the evidence was legally sufficient to support the jury's finding on comparative negligence. *See City of Keller*, 168 S.W.3d at 827.

## B. FACTUAL SUFFICIENCY

### 1. Standard of Review

In reviewing a factual insufficiency point, this court must weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam). A factual sufficiency attack on an issue on which the appellant did not have the burden of proof requires the complaining party to demonstrate there is insufficient evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). A reviewing court will reverse the trial court "only if the evidence which supports the jury's finding is so weak as to be clearly wrong and manifestly unjust." *Star Enter. v. Marze*, 61 S.W.3d 449, 462 (Tex. App.—San Antonio 2001, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)); *see also Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985). At trial, Meda had the burden of proving Flying

J's comparative negligence. Accordingly, Flying J must show there was insufficient evidence to support the jury's finding that Flying J was 80% responsible. *See Croucher*, 660 S.W.2d at 58.

### 2. *The Evidence Was Factually Sufficient*

The evidence was undisputed that Meda had performed work on the pipe at issue on at least two occasions prior to the accident in question. Notwithstanding the fact that Flying J supplied Meda with inaccurate blueprints, Meda knew that the water pipe lay in close proximity to the diesel line and undertook repairs with that knowledge. A Meda representative testified that he had written a letter acknowledging the repair of the diesel line was "a direct result of [Meda's] placing the pinhole in the line." Additionally, a Meda witness testified that his "guys knew not to use a tractor in that area." While this evidence supports a finding that Meda was negligent, we cannot say that the evidence supporting the finding was so weak as to be clearly unjust or wrong. *See Star Enter.*, 61 S.W.3d at 462; *see also Dyson*, 692 S.W.2d at 457. Flying J knew that its water line should not have been in the same trench as its diesel line. There was evidence that Flying J's refusal to shut off the water supply affected visibility. Further, there was evidence that Meda used the backhoe in accordance with Flying J's instructions. Accordingly, the evidence is factually sufficient to support the jury's apportionment of fault to Flying J.

CONCLUSION

The trial court did not err in granting a directed verdict against Flying J's breach of contract and breach of implied warranty causes of action. Further, the trial court did not impermissibly comment on the weight of the evidence. Finally, the evidence was legally and factually sufficient to support the jury's findings on negligence and apportionment of fault. Accordingly, the trial court's judgment is affirmed.

Rebecca Simmons, Justice