

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00380-CV

Floyd **LEEDER** II and Kimberly Leeder,
Appellants

v.

**WELLS FARGO BANK N.A.** as Trustee and Barclays Capital Real Estate, Inc. d/b/a HomEq
Servicing,
Appellees

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 09-364
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:         Marialyn Barnard, Justice
                 Rebeca C. Martinez, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  April 30, 2014

AFFIRMED

This is an appeal from a trial court's order granting summary judgment in favor of appellees

Wells Fargo Bank, N.A. ("Wells Fargo") and Barclays Capital Real Estate, Inc. d/b/a HomEq

Servicing ("HomEq") against appellants Floyd Leeder II and Kimberly Leeder.  On appeal, the

Leeders raise four issues contending: (1) the trial court's summary judgment order was not final

because it did not dispose of all causes of action plead; (2) the trial court erred in granting summary

judgment as to their claims; (3) the trial court erroneously permitted Wells Fargo to amend its

counterclaims after granting a plea to the jurisdiction; and (4) the trial court erred in granting summary judgment on Wells Fargo's counterclaims. We affirm the trial court's judgment.

## BACKGROUND

In 2004, the Leeders borrowed $650,000.00 from Argent Mortgage Company, LLC. The loan was secured by an adjustable rate home equity lien on their property near Boerne, Texas. The note securing the lien was subsequently indorsed to Ameriquest Mortgage Company and then finally to Wells Fargo. The exact date of these indorsements is contested by the parties.

However, it is uncontested that HomEq began servicing the Leeders loan in 2005. By the end of 2006, the Leeders were behind over $1,700.00 in payments. By April 2007, the Leeders had fallen further behind on their loan payments and were offered a forbearance agreement by HomEq, which required continued payment of the loan's monthly amount in addition to $25,411.45 in arrearages. Although the Leeders contend they complied with the agreement between April and November 2007, HomEq alleges the Leeders breached the agreement by making late and insufficient payments. Thereafter, the Leeders entered into successive repayment plans with HomEq in an attempt to resolve the issues with regard to repayment of the original loan. However, all attempts were unsuccessful and the Leeders made their last payment in September of 2008. In response, Wells Fargo filed an application for judicial foreclosure of the lien in November 2008 in a separate lawsuit.

In August 2009, the Leeders first sued Wells Fargo and HomEq for negligently servicing their loan. Since that time, the Leeders' petition has gone through multiple amendments, adding causes of action against Wells Fargo and HomEq.

In addition to answering the petitions, Wells Fargo and HomEq responded to the Leeders' lawsuit in March 2010 by counterclaiming for judicial foreclosure of the lien. Over two years later, in October 2012, the Leeders filed a plea to the jurisdiction with the trial court, challenging

Wells Fargo's standing to foreclose as a holder of the note. The trial court granted the Leeders' plea to the jurisdiction, but also granted Wells Fargo leave to amend its counterclaim to address the lack of standing at the time the counterclaim was filed.

Wells Fargo subsequently amended its counterclaim to address the lack of standing and moved for summary judgment on the counterclaim, as well as summary judgment on the claims asserted by the Leeders in their Second Amended Petition. The trial court granted the dual motions for summary judgment against the Leeders and they subsequently perfected this appeal.

## ANALYSIS

As noted above, the Leeders raise four issues on appeal, contending: (1) the trial court's order granting summary judgment was not final because it did not dispose of all of the causes of action pled in the Leeders' Fourth Amended Petition; (2) the trial court erred in granting summary judgment in favor of Wells Fargo on the Leeders' claims; (3) the trial court erroneously permitted Wells Fargo to amend its counterclaims after granting a plea to the jurisdiction instead of dismissing the counterclaims without prejudice; and (4) the trial court erred by granting summary judgment in favor of Wells Fargo on its counterclaims.

### *Fourth Amended Petition*

Wells Fargo and HomEq filed a motion for summary judgment based on the causes of action alleged in the Leeders' Second Amended Petition. However, the Leeders filed a Fourth Amended Petition[1] with their response to the motion for summary judgment. The Leeders contend they timely filed the Fourth Amended Petition, the petition added new causes of action not addressed in the motion for summary judgment, and we must presume the trial court considered

---

[1] The record does not contain the Leeders' Third Amended Petition and it does not appear such a petition was ever properly filed with the trial court. Even if the Leeders did in fact properly file a Third Amended Petition, counsel for the Leeders conceded at the hearing on the motion to strike the Fourth Amended Petition that the Third Amended Petition did not add a new cause of action.

the Fourth Amended Petition when ruling on the motion for summary judgment. Accordingly, the Leeders believe the "order granting the summary judgment motions was not a final order since it did not dispose of all causes of action plead." We disagree.

The central tenet of the Leeders' argument is that the trial court considered their Fourth Amended Petition. However, the record reflects Wells Fargo and HomEq filed a motion to strike that petition, and the trial court orally granted the motion. Despite the Leeders contentions to the contrary, a trial court's order made in open court is rendered when it is officially announced and is valid from that time forward because formal entry of a written order is only a ministerial act. *See In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969). Therefore, we do not presume the trial court considered the Fourth Amended Petition because the trial court ordered it struck.

Because the trial court struck the Fourth Amended Petition, the Leeders' argument that the summary judgment order is not final is without merit. Accordingly, we overrule this issue.

### *Summary Judgment on the Second Amended Petition*

The Leeders next contend the trial court erred in granting Wells Fargo's and HomEq's traditional and no evidence motions for summary judgment. In Texas, a party may combine both traditional and no evidence summary judgment claims into a single motion. *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004); *Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.—San Antonio 2009, no pet.). A trial court's order granting either a traditional or no evidence motion for summary judgment is reviewed *de novo*. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a party files a combined traditional and no evidence motion for summary judgment, we review the no evidence grounds of the motion first. *See Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no evidence motion there is no need to review the traditional motion. *Id.*

A no evidence motion for summary judgment under Texas Rule of Civil Procedure 166a(i) is essentially a motion for pretrial directed verdict and requires the nonmoving party to present evidence raising a genuine issue of material fact supporting each element specifically contested in the motion. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); TEX. R. CIV. P. 166a(i). The trial court is required to grant the motion unless the nonmovant produces more than a scintilla of summary judgment evidence to raise a genuine issue of material fact. TEX. R. CIV. P. 166a(i). More than a scintilla of evidence exists where the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

Here, Wells Fargo and HomEq moved for no evidence and traditional summary judgment as to the claims asserted in the Leeders' Second Amended Petition. We will review the no evidence motion first. *See Ridgeway*, 135 S.W.3d at 600.

The Leeders' Second Amended Petition: (1) asserted eleven negligence claims against HomEq; (2) accused HomEq of breaching the forbearance agreement entered into in April 2007; (3) accused HomEq of breaching a fiduciary duty owed to the Leeders; (4) accused Wells Fargo of "improperly and unlawfully institut[ing] foreclosure proceedings" between February 2008 and March 2010; (5) sought "a declaration that HomEq mishandled and/or mismanaged collection of the note during the time it was the loan servicer between March 2005 and August 2010;" and (6) sought multiple declarations against Wells Fargo regarding ownership of the home equity note and Wells Fargo's foreclosure action. We will address the no evidence challenges to the Leeders' petition below; however, we need not address the declaratory actions against either HomEq or

Wells Fargo as they were not challenged in the motion for summary judgment and were dismissed by another order that is not before us for review.[2]

*Negligence Claims*

The Leeders' petition alleged eleven separate negligent actions by HomEq in servicing the home equity loan. Specifically, the Leeders accused HomEq of negligently:

(1) failing to timely post or apply many of the Leeders' loan payments;
(2) assessing "numerous" late fees for timely received payments;
(3) failing "to apply some of the Leeders' payments to the note in any respect;"
(4) failing "to pay property taxes and/or hazard insurance by the due date;"
(5) "misrepresenting amounts it paid from the Leeders' escrow account for property taxes and/or hazard insurance;"
(6) miscalculating "amounts it paid from the Leeders' escrow account for property taxes and/or hazard insurance;"
(7) paying property taxes from the Leeders' escrow account for real property not secured by the loan;
(8) miscalculating the amount of escrow deposits the Leeders were required to make;
(9) calculating an escrow shortage in excess of $38,000.00;
(10) assessing unauthorized miscellaneous fees to the balance of the Leeders' note; and
(11) miscalculating "the correct interest rate and/or the correct amount of interest accrued."

Essentially, the Leeders sued HomEq for negligently servicing the home equity loan.

In Texas, negligence actions require proof of: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately caused by the breach. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). HomEq asserts the Leeders' negligence claims are barred by the economic loss rule. In general, the rule precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract. *See Lamar*

---

[2] The trial court dismissed the Leeders' declaratory action claims for lack of jurisdiction in a separate order signed on May 9, 2013. The Leeders did not appeal from that order, nor do they raise issues relevant to the dismissal order in this appeal.

*Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991)).

Although the Leeders ask the court to apply the broad standard set out by the Texas Supreme Court in *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947), to determine whether a cause of action sounds in tort, contract, or both, we apply the two-part test found in *DeLanney*. *See Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 685 (Tex. App.—San Antonio 2012, no pet.). Under *DeLanney*, we look at (1) the source of the duty giving rise to the injury, and (2) the nature of the injury. *Id.* Regarding the source of the duty, *DeLanney* advised:

> If the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

809 S.W.2d at 494.

Here, it is apparent none of HomEq's allegedly "negligent" actions would give rise to liability outside of the parties' agreement. After reviewing the record, we hold the Leeders presented no evidence their negligence claims accused HomEq of anything other than mismanaging its duties as the *loan servicer pursuant to the contract*. HomEq's duty to service the Leeders' home equity loan arose only under contract. Accordingly, we overrule this issue and hold the Leeders did not present even a scintilla of evidence in response to the no evidence motion to show they were entitled to recover from HomEq on anything other than the contractual duty to service the loan. *See DeLanney*, 809 S.W.2d 494–95.

*Breach of Forbearance Agreement*

In the plain language of the Second Amended Petition, the Leeders allege "HomEq breached its written forbearance agreement that it entered into with [the] Leeders' [sic] on or about

April 6, 2007." However, in their brief the Leeders twice concede they did not intend to assert this breach of contract claim against HomEq in the Second Amended Petition.

Initially, the Leeders' brief asserts "[t]he Leeders' Second Amended Petition does not specifically assert a breach of contract claim." Then in their reply brief: "[t]he Leeders agree they did not specifically assert a breach of contract claim in their Second Amended Original Petition." It is clear to the court the Leeders did not intend to assert a breach of contract claim against HomEq based on the April 6, 2007 forbearance agreement. Accordingly, we hold review of the summary judgment on that issue was affirmatively waived by the Leeders in their brief.

*Fiduciary Duty*

The Leeders' also alleged HomEq breached a fiduciary duty owed to them. However, in the no evidence motion for summary judgment, HomEq's asserted there is no evidence of a fiduciary relationship between HomEq and the Leeders. We agree.

There are two categories of relationships that give rise to a fiduciary duty: formal and informal. *See Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005). "In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law." *Id.* at 330. An informal fiduciary relationship can arise from "a moral, social, domestic or purely personal relationship of trust and confidence." *Id*. at 331 (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998).

Here, the Leeders have not produced even a scintilla of evidence of the existence of either a formal or informal fiduciary relationship with HomEq. In fact, the Leeders do not even refer to the fiduciary duty claim in either their response to HomEq's no evidence motion or any of their briefing with this court. Accordingly, we overrule the Leeders challenge and hold HomEq was entitled to no evidence summary judgment on the Leeders' breach of fiduciary duty claim. *See* TEX. R. CIV. P. 166a(i).

*Wrongful Foreclosure*

The Leeders, in their Second Amended Petition, further alleged Wells Fargo "improperly and unlawfully instituted foreclosure proceedings since it was not the legal owner or holder of the note and/or deed of trust." All parties interpreted this allegation as a claim for wrongful foreclosure. To prevail on a wrongful foreclosure claim, a party must prove: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.). Wells Fargo, in the no evidence motion, specifically challenged the Leeders to present more than a scintilla of evidence supporting any of the required elements for wrongful foreclosure.

A review of the record establishes the Leeders have failed to present any evidence of a foreclosure on the lien, much less any of the elements set out above. Accordingly, we hold the trial court properly granted summary judgment in favor of Wells Fargo on the Leeders' wrongful foreclosure claim. *See* Tex. R. Civ. P. 166a(i).

*Traditional Motion For Summary Judgment*

Because the Leeders' claims in the Second Amended Petition were properly disposed of by the no evidence motion for summary judgment, we need not analyze HomEq's and Wells Fargo's traditional motion on the same causes of action. Accordingly, we also need not address the Leeders' objections to the summary judgment evidence relied upon by HomEq and Wells Fargo in their traditional motion.

### Plea to the Jurisdiction – Counterclaims

In their third issue on appeal, the Leeders challenge the trial court's actions with regard to their plea to the jurisdiction regarding Wells Fargo's counterclaims. Specifically, the Leeders contend the trial court improperly permitted Wells Fargo to amend its counterclaim to address its

alleged lack of standing at the time the counterclaim was filed. The Leeders contend the trial court should not have permitted the amendment; rather, the trial court should have dismissed the counterclaims *without prejudice*. We review the trial court's ruling on a plea to the jurisdiction *de novo*. *See City of Houston v. Guthrie*, 332 S.W.3d 578, 586 (Tex. App.—Houston [1st Dist.] 2009, no pet).

After reviewing the record, we hold that even if the trial court erred by granting Wells Fargo leave to amend the counterclaims instead of dismissing the claims without prejudice, such error is harmless. *See* TEX. R. APP. P. 44.1. An unadjudicated cause of action dismissed without prejudice is not barred by res judicata or collateral estoppel. *See Sahagun v. Ibarra*, 90 S.W.3d 860, 863 (Tex. App.—San Antonio 2002, no pet.); *Swearingin v. Estate of Swearingin*, No. 02-05-132-CV, 2006 WL 1653294, at \*6 (Tex. App.—Fort Worth June 15, 2006, no pet.); *Brown v. Prairie View A & M Univ.*, 630 S.W.2d 405, 408 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.), *abrogated on other grounds*, *Harris County v. Sykes*, 136 S.W.3d 635, 640 (Tex. 2004). Therefore, dismissing a cause of action without prejudice is the functional equivalent of allowing a party to amend its pleading to properly invoke a trial court's subject-matter jurisdiction. Because of this equivalency, we hold the trial court's decision to grant Wells Fargo leave to amend its counterclaim did not result in reversible error. *See* TEX. R. APP. P. 44.1.

### Wells Fargo's Counterclaims

In their last appellate issue, the Leeders contend the trial court erred in granting Wells Fargo's traditional motion for summary judgment on its amended counterclaim. The counterclaim sought, among other things, a court order authorizing judicial foreclosure.

A traditional motion for summary judgment is properly granted only when the movant establishes there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Lesieur v. Fryar*, 325 S.W.3d 242, 246 (Tex. App.—San Antonio 2010, pet. denied)

(citing *Browning v. Prostok*, 165 S.W.3d 336, 244 (Tex.2005)). When reviewing a traditional summary judgment, we take as true evidence favorable to the nonmovant and indulge every reasonable inference from the evidence in its favor. *Lesieur*, 325 S.W.3d at 246 (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)). Further, in deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and evidence favorable to the nonmovant is accepted as true. *Cole v. Johnson*, 157 S.W.3d 856, 859 (Tex. App.—Fort Worth 2005, no pet.) (citing *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995)).

Here, the Leeders contend:

> The trial court erred in granting summary judgment on Wells Fargo's amended counterclaim to foreclose . . . because [there is] a genuine issue of material fact as to when Wells Fargo became the owner or holder of the note and whether it was authorized to pursue foreclosure at any time before February 1, 2012.

The Leeders' claim is based on the confusing assignment history of their note from the loan originator, Argent Mortgage Company, to Ameriquest Mortgage Company, and eventually to Wells Fargo.

The record includes documents purporting to show an assignment of the note from Ameriquest to Wells Fargo in either 2004, 2008, or at the very latest February 1, 2012. Meanwhile, Wells Fargo emphatically insists it "has been the owner, holder, and mortgagee since 2005," based on its role as trustee of a home loan pooling and servicing agreement that included the Leeders' loan. We agree with the Leeders that a material fact issue exists as to when Wells Fargo became the owner and holder of their note and whether it could pursue foreclosure at any time before February 1, 2012. However, we hold the fact issue created by the assignment history prior to February 1, 2012 is irrelevant to the summary judgment granting judicial foreclosure in favor of Wells Fargo.

Wells Fargo's amended counterclaim seeking judicial foreclosure, upon which the trial court granted summary judgment, was filed on *January 4, 2013*. Therefore, even if we accept the latest possible date of transfer on February 1, 2012, there is no genuine issue of material fact as to whether Wells Fargo was the owner and holder of the note at the time it sought judicial foreclosure of the lien. Accordingly, we overrule the Leeders' issue challenging summary judgment as to Wells Fargo's counterclaim for judicial foreclosure.

## CONCLUSION

Based on the foregoing, we overrule the Leeders' issues and affirm the trial court's judgment.

Marialyn Barnard, Justice