COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| LANA LEWIS, | § | No. 08-23-00031-CV |
| Appellant, | § | Appeal from |
| v. | § | 131st Judicial District Court |
| VICTOR C. HUFF, JR., | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2019-CI-07818) |

## MEMORANDUM OPINION

In this equitable-contribution case, Lana Lewis appeals the trial court's directed verdict in Victor C. Huff, Jr.'s favor. Because we conclude Lewis raised no evidence showing that she made a compulsory payment of more than her fair share of the parties' common obligation, we affirm.[1]

## BACKGROUND

Lewis and Huff co-owned the construction company Star Operations, Inc. In addition to being its majority shareholder, Lewis was also Star's president. Star typically did public works projects, often for the Texas Department of Transportation. These public works projects required payment bonds, which ensured payment for lower-tier subcontractors on the project if the general

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent they might conflict with our own. *See* TEX. R. APP. P. 41.3.

contractor refused to pay, and performance bonds, which guaranteed payment to the state if any contractor failed to complete their contracted construction work.

Star contracted with Great American Insurance Company (GAIC) to issue payment and performance bonds on its behalf. As part of Star and GAIC's agreement, Star, along with its owners, Huff and Lewis, as well as Crystal Signs, Inc. and Rose Resource Capital, LLC (two other corporations owned by Huff and Lewis), agreed to indemnify GAIC for any claim under the bonds. The indemnity agreement states:

> The Undersigned [*i.e.*, Star, Huff, Lewis, Crystal Signs, and Rose Resource Capital], ***jointly and severally***, shall exonerate, indemnify, hold harmless and keep the Surety [*i.e.*, GAIC] indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of being requested to execute or procure, or having executed or procured the execution of Bonds on behalf of any of the Undersigned, (2) By reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, ***upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor***. (emphasis added)
>
> .     .     .
>
> Each of the Undersigned further waive and subordinate all rights of indemnity, subrogation and contribution against each other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.

In other words, GAIC could enforce the agreement's obligations against any (or all) of indemnitors as soon as "liability exists or is asserted," even if GAIC had not yet made a related payment. However, the indemnitors could not sue one another under the agreement until GAIC was made whole.

2

Star contracted to perform electrical work on a 40-mile stretch of the SH-130 toll road, and GAIC provided Star's payment bond for the project under the terms of their indemnity agreement.[2] In May 2012, Dig Tech, Inc. made a claim on Star's payment bond. Dig Tech was a subcontractor on the SH-130 project that claimed it performed work for which Star refused to pay. Star disputed whether Dig Tech performed the work, so in August 2012, Dig Tech sued Star and GAIC, which tendered its defense to Star.

The Dig Tech suit resulted in a judgment awarding Dig Tech $228,524 in actual damages, $330,950 in trial court attorneys' fees, over $100,000 in conditional appellate attorneys' fees, costs, and pre- and post-judgment interest. The trial court entered final judgment on April 16, 2015, and the following day, Gary Ballinger at GAIC emailed Lewis, stating, "I have not heard anything from you regarding your plans to address this matter and to hold [GAIC] harmless per the terms and conditions of the Agreement of Indemnity. . . . Please call me . . . or email me with the specifics of your plan to resolve this."

Star filed a notice of appeal in July 2015. Shortly after, Ballinger asked Star and GAIC's joint defense counsel for "a complete copy of the supersedeas bond that is required for the appeal." Lewis contacted SureTec to provide a $700,000 supersedeas bond. Lewis later testified she believed a supersedeas bond was necessary because without one, Star's assets would be seized to satisfy the Dig Tech judgment, and Star would have defaulted on all current projects. Though the parties dispute the necessity of Lewis's next steps, she claims SureTec required an irrevocable letter of credit as collateral in case the Dig Tech judgment was not reversed on appeal.[3] Star thus secured an irrevocable standby letter of credit from BBVA Compass Bank for $700,000, which was collateralized with Lewis's personal funds through a certificate of deposit. SureTec then

---

[2] This bond is later referred to as Bond #305 94 58.

[3] Huff characterizes the letter of credit as a voluntary step Lewis took to obtain the supersedeas bond.

issued the supersedeas bond on Star and GAIC's behalf to stay execution of the judgment pending appeal.

The court of appeals affirmed Dig Tech's judgment. *Star Operations, Inc. v. Dig Tech, Inc.*, No. 03-15-00423-CV, 2017 WL 3263352 (Tex. App.—Austin July 27, 2017, pet. denied) (mem. op.). Soon after, Ballinger wrote to Lewis, copying Huff and stating in part:

> While we understand that the decision has been made to file a Petition for Review of the Court of Appeals decision with the Texas Supreme Court[,] it is also our understanding that there is very little likelihood that the Texas Supreme Court will grant a review.
>
> This correspondence is to remind Star Operations, Inc. and its Indemnitors of their ongoing obligation and responsibility to [GAIC] . . . on Bond #305 94 58 per the terms and conditions of the Agreement of Indemnity executed on or about October 12, 2009. Per the terms and conditions of the Agreement of Indemnity[, the Indemnitors] each, jointly and severally, agreed to exonerate, indemnify and keep [GAIC] indemnified against any and all liability for loss, costs, and/or expenses of whatever kind or nature that [GAIC] may sustain and incur as a result of having issued Bond #305 94 58 at your request.

The Texas Supreme Court denied Star and GAIC's petition for review on March 16, 2018. Ballinger then wrote Lewis and Huff "to reconfirm GAIC's demand for exoneration and indemnity" and request that they "provide GAIC with verification that the judgment has been paid and a copy of the executed settlement and release documents." The trial court signed its final judgment ordering Star and GAIC to pay Dig Tech $756,069 plus interest and costs. SureTec paid $700,000 from the supersedeas bond, which BBVA Compass Bank reimbursed per the irrevocable letter of credit by closing Lewis's personal certificate of deposit. GAIC paid the remaining amount of the judgment, totaling $63,111.83. Star did not reimburse—and GAIC did not seek reimbursement for—that amount.

Lewis then brought this equitable-contribution suit against Huff, seeking to recover half of the $700,000 supersedeas bond proceeds based on their joint-and-several liability under the GAIC

4

indemnity agreement.[4] The case went to a jury, and Huff moved for directed verdict on several grounds after Lewis rested. One of Huff's arguments was that GAIC did not "sustain and incur" liability for the $700,000 because SureTec—not GAIC—paid the supersedeas bond, and because GAIC did not demand that Lewis collateralize the $700,000 supersedeas bond, it was not a compulsory payment.

The trial court agreed, stating that absent "any evidence that [GAIC] demanded that that supersedeas bond be posted on behalf of Star[,] . . . there is no tie between this indemnity agreement and that supersedeas bond[.]"Ruling from the bench, the trial court concluded:

> [T]he court finds that if an equitable contribution claim existed between the parties, it had to have arisen out of the [GAIC] indemnity agreement, and no money is paid by [GAIC] on behalf of Star for which they have sought indemnity. . . . [I]f they had paid this judgment and sought indemnity, I do believe that . . . Ms. Lewis would have had an equitable contribution claim against any of the solvent indemnitors. But that didn't happen. And as a result, and because Mr. Huff was not a signator[y] on the supersedeas bond that ultimately Ms. Lewis posted, I am granting a directed verdict in favor of the defendant on the plaintiff's equitable contribution claim.

The trial court later entered a final judgment order in the case. Lewis's motion for new trial was overruled by operation of law, and she appealed.

## STANDARD OF REVIEW

"We review a trial court's grant of directed verdict de novo, using the legal sufficiency standard appellate courts apply to no-evidence summary judgments." *City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022) (footnotes omitted). "A trial court properly grants a directed verdict when no evidence supports a vital fact or the evidence fails to state a claim as a matter of law." *Id.* "We consider the evidence in a light favorable to the party suffering an adverse judgment, crediting all reasonable inferences and disregarding evidence and inferences to the contrary." *Id.*

---

[4] By this point, Crystal Signs was insolvent and Rose Resources had been dissolved, so Lewis sued Huff as the remaining solvent co-indemnitor.

"[W]e can consider any reason the directed verdict should have been granted, even if not stated in the party's motion." *Ibarra v. Nat'l Const. Rentals, Inc.*, 199 S.W.3d 32, 37 (Tex. App.—San Antonio 2006, no pet.) (citing *Gonzales v. Willis*, 995 S.W.2d 729, 740 (Tex. App.—San Antonio 1999, no pet.)).

## APPLICABLE LAW

A contribution claim between co-guarantors is equitable in nature and arises from their agreement to equally bear a shared obligation. *Kroesche v. Wassar Logistics Holdings, LLC*, No. 01-20-00047-CV, 2023 WL 1112002, at *25 (Tex. App.—Houston [1st Dist.] Jan. 31, 2023, pet. denied) (mem. op.) (citing *Orr v. Broussard*, 565 S.W.3d 415, 420 (Tex. App.—Houston [14th Dist.] 2018, no pet.)). "Thus, a co-obligor who discharges more than his share of the common obligation may seek equitable contribution from his co-obligors." *Orr*, 565 S.W.3d at 420. "The elements of a claim for equitable contribution are that (a) the plaintiff and the defendant share a common obligation or burden, and (b) the plaintiff 'has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden.'" *Id.* (quoting *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007)). A payment is deemed compulsory "when the party making it cannot legally resist it." *Emps. Cas. Co. v. Transp. Ins. Co.*, 444 S.W.2d 606, 609–10 (Tex. 1969) (citing 18 AM. JUR. 2d *Contribution* § 11). However, a "voluntary payment which [a co-obligor] is not under legal obligation to make does not give a right of action against [the] co-obligors for contribution[.]" *Id.*

## ANALYSIS

Lewis contends the trial court erred in granting Huff's motion for directed verdict because (1) she presented evidence on each essential element of her equitable-contribution claim, (2) the trial court's stated basis for granting directed verdict is erroneous because the parties' indemnity

6

obligations arose regardless of whether GAIC made any payment, and (3) Huff's alternative arguments are insufficient to support a directed verdict.

In addition to responding to Lewis's appellate arguments, Huff also contends he is entitled to a summary affirmance because (1) Lewis failed to demonstrate harmful error under Texas Rule of Appellate Procedure 44.1(a), and (2) she did not brief all the arguments he asserted in his motion for directed verdict before the trial court.

As to Huff's first waiver argument, "[g]enerally, courts do not engage in harm analysis when determining whether to reverse a directed verdict where some evidence of a material fact exists." *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 689 (Tex. App.—San Antonio 2012, no pet.) (citing *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978)); *see State Office of Risk Mgmt. v. Martinez*, 300 S.W.3d 9, 11–12 (Tex. App.—San Antonio 2009, pet. denied) (citing *Wedgeworth v. Kirskey*, 985 S.W.2d 115, 116 (Tex. App.—San Antonio, 1998, pet. denied)). "However, in at least one instance, the Texas Supreme Court has held that a procedural error in granting a directed verdict before the close of evidence did not require reversal where no harm was shown." *Martinez*, 300 S.W.3d at 12 (citing *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003)). In other words, the default rule is that an appellant is not required to show harm when appealing a directed verdict; if anything, the appellee can argue an erroneously granted directed verdict was harmless error. *See id.* Thus, if Lewis can show some evidence of a material fact that renders the default judgment improper, she does not also have to show harm under Rule 44.1(a)(1).

As to Huff's second waiver argument, "we remain wary of concluding that a waiver has occurred when a reasonable and liberal construction of the Rules of Appellate Procedure would allow us to reach the merits of the dispute." *Nevarez Law Firm, P.C. v. Perez*, No. 08-22-00131-CV, 2023 WL 4754624, at *2 (Tex. App.—El Paso July 25, 2023, no pet. h.) (mem. op.). Lewis has addressed both the basis for the trial court's directed verdict and alternative grounds Huff

asserted. While some of Lewis's points addressing Huff's alternative grounds may be brief, her appellate brief meets what Rule 38.1(f) requires because we can discern the legal question at issue. *Id.* at *3 (citing TEX. R. APP. P. 38.1(f)). Huff is not entitled to summary affirmance based on either of his waiver issues.

As to the merits of Lewis's appeal, because the parties agree they shared a common obligation or burden under the GAIC indemnity agreement, Lewis has satisfied the first element of her equitable-contribution claim. They contest whether Lewis can meet the second element: whether she made a compulsory payment of more than her fair share of the parties' common obligation. *See Orr*, 565 S.W.3d at 420.

Lewis argues that the use of her personal funds to secure the supersedeas bond (which later fulfilled $700,000 of the Dig Tech judgment) constituted a compulsory payment. She points to the following "progression of correspondence from GAIC" that she contends establishes had a supersedeas bond not been posted on its behalf, GAIC would have considered the indemnitors in breach of their agreement and thus "legally, she had no choice" but to collateralize the supersedeas bond:

- Ballinger's September 2, 2012 letter to Lewis in her capacity as Star's president, in which GAIC tenders its defense in the Dig Tech lawsuit, stating "[y]our failure to acknowledge receipt of this correspondence or failure to promptly respond will be viewed as your refusal to accept the tender of defense and your refusal to honor the terms, covenants and conditions of the Agreement of Indemnity executed by you."

- Ballinger's April 17, 2015 email to Lewis stating that it had "not heard anything from you regarding your plans to address this matter and to hold [GAIC] harmless per the terms and conditions of the Agreement of Indemnity" and had "not received a response to GAIC's March 17, 2015 demand for collateral per the terms and conditions of the Agreement of Indemnity."

- Ballinger's July 14, 2015 email to Star's counsel, requesting "a complete copy of the supersedeas bond that is required for the appeal."

8

- Ballinger's August 30, 2017[5] letter to Lewis following the court of appeals' opinion affirming the Dig Tech judgment "to remind Star Operations, Inc. and its Indemnitors of their ongoing obligation and responsibility to [GAIC]."

Lewis also cites her testimony in which she states GAIC required the supersedeas bond.

However, Lewis has raised no evidence that she made a compulsory payment arising from the indemnity agreement. What Lewis points to as indicative of GAIC's purported demand that she (whether on behalf of Star or individually) post the supersedeas bond does not rise to a compulsory payment as a matter of law—*i.e.*, as a payment she could not legally resist. *Emps. Cas. Co.*, 444 S.W.2d at 609–10; *cf. Evanston Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, No. 1:09-CV-909, 2012 WL 12977322, at *12 (E.D. Tex. Mar. 19, 2012) (applying Texas law) (concluding a court-order payment of a settlement was compulsory). Though Lewis emphasizes Ballinger's email characterizing the supersedeas bond as "required for the appeal," that does not amount to a demand that Lewis or any of her co-indemnitors post the bond. GAIC's communications referring to the indemnitors' obligations under the agreement or requiring a response to its tender of defense are likewise not demands for payment. Without evidence of a compulsory payment, Lewis cannot establish the second element of her equitable-contribution claim.

Still, Lewis argues the trial court erred in directing a verdict based on GAIC's lack of payment because the parties' obligations arose regardless of whether GAIC made any payment. Lewis points to the language in the indemnity agreement that states "[p]ayment . . . shall be made to the Surety by the Undersigned, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor." By

---

[5] The supersedeas bond was posted in September 2015.

her argument, the indemnity obligation arose as soon as Dig Tech obtained a judgment against GAIC and Star.

But this argument fails for the same reason as the compulsory-payment issue because it still requires a "demand by" GAIC. Because there is no evidence GAIC demanded that Lewis collateralize the supersedeas bond (nor did it demand repayment of the remaining $63,111.83 of the Dig Tech judgment), there is no basis for Lewis to seek contribution from Huff under the indemnity agreement.

We affirm the trial court's order of directed verdict. Because we affirm based on the trial court's stated basis, we do not consider Huff's alternative grounds for directed verdict.

## CONCLUSION

Having overruled Lewis's issues on appeal, we affirm the trial court's order granting directed verdict for Huff.

YVONNE T. RODRIGUEZ, Chief Justice

October 19, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.
Palafox, J., dissenting without opinion

10